UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Hartford)

-------------------------------------------------------:

THE CADLE COMPANY,           :   CIVIL ACTION NO.
        Plaintiff             :   3:02-CV-30 (TPS)
                           :

v.                            :

DOUGLAS WHITE  and         :
ROSALIE A. WHITE,          :
        Defendants       :

-------------------------------------------------------:   August 13, 2004

## JOINT TRIAL MEMORANDUM

The parties to this civil action hereby submit their joint trial management report.

**1.**    **Trial Counsel.**

For the Plaintiff: Paul N. Gilmore, Esq., Updike, Kelly & Spellacy, P.C., One State, Street, Hartford, Connecticut 06103; (860) 548-2641; (860) 548-2680 (fax); e-mail pgilmore@uks.com.

For the Defendants: R. Bradley Wolfe, Esq., Gordon, Muir and Foley, LLP, Ten Columbus Blvd., No. 53, Hartford, Connecticut 06106-5123; (860) 525-5361; (860) 525-4849 (fax); e-mail rbwolfe@gmflaw.com.

2.    **Jurisdiction**.

This Court has jurisdiction over this action by virtue of the diversity of citizenship between the parties pursuant to 28 U.S.C. Section 1332.  The amount in controversy exceeds the sum of $75,000.00.

3.    **Jury/Non-jury**.

This is a non-jury case.

4.    **Nature of Case**.

This is a three-count complaint asserting the liability of both the transferor and transferee for fraudulent transfers pursuant to Connecticut's embodiment of the Uniform Fraudulent Transfer Act, codified at Connecticut General Statutes §52-552a through 52-552l, inclusive. Plaintiff, a judgment creditor of the defendant-transferor, Douglas White, seeks to establish the liability of both the transferor and the transferee Rosalie White a/k/a Lee White, and seeks, by way of relief, *inter alia*, money damages against the transferee, the avoidance of transfers and an injunction against further transfers.  Inasmuch as the transfers are comprised of the negotiation by defendant Douglas White of instruments, specifically, so-called commission checks, to defendant Rosalie White over a period of years, the principal relief sought is a money judgment against the defendant transferee, Rosalie White a/k/a Lee White, with respect to all such prior

transfers, together with an injunction against the defendants prohibiting any and all like transfers in the future.

There are three general statutory bases for the action, §52-552e (a)(1), §52-552e (a)(2) and §52-552f. Count One, brought under Connecticut General Statutes §52-552e (a)(1), requires the plaintiff to establish, as to each challenged transaction for which recovery is sought, that the transaction constituted a "transfer" of an "asset" (both statutorily defined terms) by the defendant-transferor with an actual intent by the defendant-transferor, Douglas White, to hinder, delay or defraud one or more of his creditors. Plaintiff seeks, by way of relief, *inter alia*, money damages against the transferee, the avoidance of transfers and an injunction against further transfers.

Count Two, brought under Connecticut General Statutes §52-552e(a)(2), requires the plaintiff to establish, as to each challenged transaction for which recovery is sought, that the transaction constituted a "transfer" of an "asset" (both statutorily defined terms) by the defendant-transferor, that was made without defendant Douglas White (the transferor) receiving reasonably equivalent value in exchange therefor, and at a time when (i) he was engaged or about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction or, alternatively, (ii) he intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay

as they became due. Plaintiff seeks, by way of relief, *inter alia*, money damages against the transferee, the avoidance of transfers and an injunction against further transfers.

The Third Count, brought under Connecticut General Statutes §52-552f, requires the plaintiff to establish, as to each challenged transaction for which recovery is sought, that the transaction constituted a "transfer" of an "asset" (both statutorily defined terms) by the defendant-transferor, that was made without defendant Douglas White (the transferor) receiving reasonably equivalent value in exchange therefor, and that defendant Douglas White was insolvent at the time of such transfer or became insolvent as a consequence of such transfer. Plaintiff seeks, by way of relief, *inter alia*, money damages against the transferee, the avoidance of transfers and an injunction against further transfers.

5. **Stipulations of Fact and Law**.

The parties stipulate that Connecticut law governs the outcome of this civil action.

The parties hereto, for the purpose of the trial on the merits of this case, hereby stipulate to the following facts. It is expressly understood that these facts are to be found by the court without the need of presentation of evidence. The parties hereto have diverse contentions as to whether and, if so, what, other and further facts may be reasonably inferred from the stipulated facts. The Court should not view this stipulation as prohibiting the Court from making such inferences from the stipulated facts as it determines to be reasonable; nor does this stipulation

prohibit the Court from making other and further factual findings based upon any such reasonable inferences. In addition to the foregoing, the parties each reserve the right to present evidence at trial to support other and further factual findings by the Court. The stipulated facts are as follows:

1. Plaintiff, The Cadle Company ("Cadle"), is an Ohio corporation with its principal place of business at 100 North Center Street, Newton Falls, Ohio.

2. Defendant, Douglas C. White ("Douglas White") is an individual residing at 53 Flat Rock Hill Road, Old Lyme, Connecticut.

3. Defendant, Rosalie A. White ("Rosalie White") is an individual residing at 53 Flat Rock Hill Road, Old Lyme, Connecticut.

4. This Court has jurisdiction over this action by virtue of the diversity of citizenship between the parties pursuant to 28 U.S.C. Section 1332. The amount in controversy exceeds the sum of $75,000.00.

5. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 because the defendants reside in this district.

6. Plaintiff is the judgment creditor of defendant Douglas White by virtue of, and pursuant to the terms and provisions of, a certain final judgment entered in a civil action formerly pending in the Superior Court for the Judicial District of Windham at Putnam, which

civil action became known as <u>The Cadle Company v. Glen Falls Realty Partnership, et al</u> and bearing civil action number CV-96-0053687-S, which judgment was entered on or about April 21, 1997 in the amount of $317,854.10, which includes costs, interest, taxes and additional fees (hereinafter collectively referred to as the "Judgment"). The indebtedness with respect to which the Judgment relates pre-dates 1991.

7. To this date, the Judgment remains unsatisfied, and, as of the present time, the Judgment, plus post-judgment interest from and after the entry of the Judgment up to and including the present time, remains due and owing to The Cadle Company from Douglas C. White. The accrued interest on the Judgment, as of August 9, 2004, is the sum of $244,922.52, to which additional interest continues to accrue at the per diem rate of $88.29. Thus, the amount of the outstanding judgment as of August 9, 2004 is the sum of $562,776.62, to which a per diem rate is applied from and after August 9, 2004.

8. Defendant Douglas White and defendant Rosalie White are husband and wife, respectively.

9. Defendants Douglas White and Rosalie White are not estranged, one from the other, and they currently live together as husband and wife, and have so lived together before and after the entry of the Judgment through and including the present time.

10.  The defendant Douglas White is a manufacturer's representative, a sole proprietor who earns money solely on a commission basis from the various companies that he represents. These commissions are paid to Douglas White periodically by means of a check payable to the order of Douglas White in the amount of the earned commission.  Upon receipt of most of his commission checks, Douglas White endorses and delivers the commission check over to his wife, defendant Rosalie White (a/k/a Lee White). He retains and deposits the other checks into his own checking account (which is a joint account).

11.  Defendant Rosalie White deposits the endorsed commission checks into her checking account, an account maintained solely in her name and over which defendant Douglas White has no signatory authority (which account, over the years, has been maintained first with The Washington Trust Company and, thereafter, with Liberty Bank).

12.  The foregoing check negotiation and deposit pattern has continued, on an uninterrupted basis for a time prior to 1991, and has continued up through and including the present time.

13.  Defendant Rosalie White uses the money in said account, in part, to pay the defendants' respective and collective everyday living expenses of their common life together, which payments are made by checks drawn by her on said account.  In addition thereto, most of the defendant-transferor's business expenses for his sole proprietorship are paid by the

defendant-transferee, Rosalie White (a/k/a Lee White), by means of checks drawn by her on her aforesaid personal bank account, with defendant Douglas White writing personal checks on his checking account for only a modest amount of his overall business expenses. Thus, the proceeds of the commission checks are, with a few minor exceptions, used by the transferee for those two purposes.

14. The amount of the commission checks so endorsed and delivered by defendant Douglas White to defendant Rosalie White occurred throughout each year in question. The account records of the bank accounts of defendant Rosalie White (a/k/a Lee White) with The Washington Trust Company and Liberty Bank, together with her testimony (and/or the stipulated facts), and the photocopies of the commission checks deposited into her account and thus presented for collection by defendant Rosalie White (which copies were produced by said banks in many cases), collectively detail the frequency and amount of the commission checks endorsed and delivered to Rosalie White by Douglas White, and itemize the same.

15. In the mid-1980s, defendant Douglas White owned a corporation with several other individuals. The shareholders then decided to form a partnership to purchase a new location to house the business facilities (Glen Falls Realty Partnership), which real property purchase was financed with a purchase money loan secured by a mortgage on the business premises. The defendant Douglas White was an obligor on the corporate and real estate debt.

16. The nature of the business was the packaging of products for and on behalf of manufacturers, which products would be packaged at the facility. The Company closed its doors for good by the early 1990s. The real property that housed the business was foreclosed and a deficiency judgment was entered in connection therewith, which is the judgment on which the plaintiff's creditor status rests.

17. Prior to moving to Connecticut, the defendants owned successive residences in Massachusetts, which residences were always titled in their names jointly. Approximately one year after starting the company, the couple moved to Connecticut, to the real property commonly known as 255 Cemetery Road, Canterbury Connecticut. This property, into which the equity from the sale of the Massachusetts' home was put, was conveyed to defendant Rosalie White alone. Defendant Douglas White's salary was used in substantial measure to pay the mortgage debt.

18. In 1998 the house was sold by the Trust and the proceeds thereof were used to purchase the couple's current residence, 53 Flat Rock Road, Old Lyme, Connecticut. For a period of time Rosalie White's parents resided at that address. Title was taken in the name of the trust, the trustee of which is defendant Douglas White's sister (no relation to the settlor of the trust and the sister-in-law of trust beneficiary defendant Rosalie White).

19. From at least 1997 through and including the present time, the defendant Douglas White has held no real property in his name, no financial investments in his name, and only very modest items of personal property. The only other items of personal property that he may have are the contingent fee commissions (i.e., the contract to receive a commission if the customer for the item fully pays the manufacturer therefor, at which point in time the fee commission is paid to defendant Douglas White and then paid over by him to defendant Rosalie White). The amount of such contingent claims is negligible when compared to his liabilities. Throughout this period of time, Douglas White's liability to Cadle Company and its predecessors exceeded his assets.

6.    **Plaintiff's Contentions.**

The plaintiff's factual contentions with respect to each cause of action are stated generally as follows:

A. First Count: Intentionally fraudulent transfers.

The defendant Douglas White is a manufacturer's representative, a sole proprietor who earns money solely on a commission basis from the various companies that he represents. He endorses and delivers substantially all of his commission checks over to his wife, defendant Rosalie White (a/k/a Lee White). Defendant Rosalie White deposits the checks into her checking account, an account maintained solely in her name (which, over the years, has been

maintained first with The Washington Trust Company and, thereafter, with Liberty Bank). The foregoing check negotiation and deposit pattern has continued, on an uninterrupted basis (with the exception of a small amount of modest commission checks that were deposited into Douglas White's own checking account), since at least 1991, and has continued through to the present time.

Rosalie White uses the money in said account, in part, for the defendants' respective living expenses in their common life together. In addition thereto, most of the defendant-transferor's business expenses for his sole proprietorship are paid by the defendant-transferee, Rosalie White (a/k/a Lee White), by means of checks drawn on her aforesaid personal bank account, with defendant Douglas White writing personal checks on his checking account for only a modest amount of his overall business expenses.

Plaintiff maintains that Douglas White's transfer of substantially all of his commission checks to defendant Rosalie White on a regular basis over a period of years all qualify as fraudulent transfers under the Uniform Fraudulent Transfer Act. In the First Count of the Complaint, the plaintiff maintains that all such transfers were made by the defendant Douglas White with the intent to hinder, delay or defraud his creditors. Plaintiff relies on the statutory guidelines known as the "badges of fraud," from which it seeks to have an intent to hinder, delay

or defraud creditors be found by reasonable inference, which badges of fraud are set forth in

Connecticut General Statutes Section 52-552e, and which reads as follows:

> In determining actual intent under subdivision (1) of subsection (a) of this
> section, consideration may be given, among other factors, to whether: (1) The
> transfer or obligation was to an insider, (2) the debtor retained possession or
> control of the property transferred after the transfer, (3) the transfer or obligation
> was disclosed or concealed, (4) before the transfer was made or obligation was
> incurred, the debtor had been sued or threatened with suit, (5) the transfer was of
> substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor
> removed or concealed assets, (8) the value of the consideration received by the
> debtor was reasonably equivalent to the value of the asset transferred or the
> amount of the obligation incurred, (9) the debtor was insolvent or became
> insolvent shortly after the transfer was made or the obligation was incurred, (10)
> the transfer occurred shortly before or shortly after a substantial debt was incurred,
> and (11) the debtor transferred the essential assets of the business to a lienor who
> transferred the assets to an insider of the debtor.

In the mid-1980s, defendant Douglas White formed a corporation with several other

individuals, all of whom, including Douglas White, were managing shareholders of the business.

The business grew for a time, and the volume of business outgrew its facilities.  The

shareholders then decided to form a partnership to purchase a new location to house the business

facilities (Glen Falls Realty Partnership), which real property purchase was financed with a

purchase money loan secured by a mortgage on the business premises.  The defendant Douglas

White was an obligor on the corporate and real estate debt.

The nature of the business was the packaging of products for and on behalf of manufacturers, which products would be packaged at the facility. The preponderance of the business was manufacturers' overflow, i.e., the packaging of products that the manufacturers could not handle themselves internally due to the volume of business. When the economy retracted in the late 1980s, manufacturers' sales volumes decreased to the extent that the outsourcing of product packaging substantially diminished (at least to the defendant's company), defendant's company suffered severe financial reversals as a consequence thereof, and closed its doors for good in the early 1990s. The real property that housed the business was foreclosed and a deficiency judgment was entered in connection therewith, which is the judgment on which the plaintiff's creditor status rests.

Prior to moving to Connecticut, the defendants owned successive residences in Massachusetts, which residences were always titled in their names jointly. Approximately one year after starting the company, the couple moved to Connecticut, to the real property commonly known as 255 Cemetery Road, Canterbury Connecticut. This property, into which the equity from the sale of the Massachusetts' home was put, was conveyed to defendant Rosalie White alone. Defendant Douglas White's salary was used in substantial measure to pay the mortgage debt.

Defendant Rosalie White in fact guaranteed some of the additional corporate borrowings that were incurred in an ultimately unsuccessful effort to salvage the business. In 1993, the Cemetery Road property was sold to a trust, the so-called Anne Fieldman Trust (of which defendant Rosalie White is a beneficiary, together with her elderly mother), for the sum of $213,500.00, and the defendants continued to reside in said residence until 1998 under an informal arrangement with the trust.

Less than three weeks after the closing, defendant Rosalie White, purportedly on behalf of the trust, entered into a listing arrangement with a broker, listing the property for sale at the asking price of $297,000.00, nearly $84,000.00 greater than the sum paid for the property by the trust. A contract to sell that property was entered in early 1994 for the sum of $275,000.00, but a contingency making performance dependent on the purchaser's home caused that contract to fall through.

In 1998 the house was sold and the proceeds thereof were used to purchase the couple's current residence, 53 Flat Rock Road, Old Lyme, Connecticut. Title was taken in the name of the trust, the trustee of which is defendant Douglas White's sister (no relation to the settlor of the trust and the sister-in-law of trust beneficiary defendant Rosalie White). The defendants live there rent free, paying only the real estate taxes on the property, and that with the income received by them from renting a modest apartment that is attached to the home. The defendants

insure the dwelling at 53 Flat Rock Road for at least $300,000.00 and the policy was issued in their names jointly as the owners of the real property.

In February of 1997, just prior to the entry of the $317,000.00 deficiency judgment against defendant Douglas White, a contract was entered into for the purchase of a used 35 foot sailboat in the approximate amount of $50,000.00. The $5,200.00 deposit was paid for by the funds in defendant Rosalie White's checking account (into which Douglas White's canceled checks were deposited). Defendant Douglas White selected the boat, negotiated the contract, and commissioned and paid for the boat "survey," signing the check for the survey despite not technically having signatory authority over the Rosalie White checking account. Title to the boat was taken in the name of Rosalie White's then 91 year old mother. The sailboat is docked at a marina near the defendants' home, and they are the ones who presently and, in the past, make use of it. The registration fee with the state is paid out of Rosalie White's checking account, and said account is used to pay the marina dues and other costs associated with the use and ownership of the boat.

Defendant Douglas White was insolvent throughout the period of time that he has transferred his income to his wife, from at least 1991 to the present. Throughout that period of time the defendant Douglas White has held no real property in his name, no financial investments in his name, and only very modest items of personal property. The only other items

371418

15

of personal property that he may have are the contingent fee commissions (i.e., the contract to receive a commission if the customer for the item fully pays the manufacturer therefor, at which point in time the fee commission is paid to defendant Douglas White and then paid over by him to defendant Rosalie White). The amount of such contingent claims is negligible when compared to his liabilities.

Plaintiff is the judgment creditor of defendant Douglas White by virtue of, and pursuant to the terms and provisions of, a certain final judgment entered in a civil action formerly pending in the Superior Court for the Judicial District of Windham at Putnam, which civil action became known as The Cadle Company v. Glen Falls Realty Partnership, et al and bearing civil action number CV-96-0053687-S, which judgment was entered on or about April 21, 1997 in the amount of $317,854.10, which includes costs, interest, taxes and additional fees (hereinafter collectively referred to as the "Judgment"). The indebtedness with respect to which the Judgment relates pre-dates 1991. To this date, the Judgment remains unsatisfied, and, as of the present time, the Judgment, plus post-judgment interest from and after the entry of the Judgment up to and including the present time, remains due and owing to The Cadle Company from Douglas C. White. The accrued interest on the Judgment, as of August 9, 2004, is the sum of $244,922.52, to which additional interest continues to accrue at the per diem rate of $88.29. Thus, the maximum amount of damages, as of the present time is approximately $562,776.62.

Connecticut General Statutes Sec. 52-552i provides, in relevant part, that

(b) [T]o the extent a transfer is voidable in an action by a creditor under subdivision (1) of subsection (a) of 52-552h, the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against: (1) The first transferee of the asset or the person for whose benefit the transfer was made. . . .

(c) If the judgment under subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may pertain.

Id.

Thus, upon proof that actual and/or constructive transfers have occurred, and in what amounts, the plaintiff is entitled to recover a judgment against the transferee for the value of the assets transferred or the amount necessary to satisfy the plaintiff's claim, whichever is less. In essence, proof of the actual and/or constructively fraudulent transfer establishes the plaintiff's right to recover damages against the transferee in an amount equal to the collective sum of the fraudulent transfers, subject to a cap equal to the outstanding balance of the Judgment.

The asset transfers alleged in the complaint, and on which proof will be offered at trial, are all monetary transfers made by defendant Douglas White to defendant Rosalie White throughout two separate but overlapping periods of time. Specifically, the transfers that comprise the damages is the pattern of conduct in which the defendant Douglas White has

engaged in, and continues to engage in, whereby he transfers (and has transferred), within the meaning of the term "transfer" as defined in Connecticut General Statutes Section 52-552b, to defendant Rosalie White, all or substantially all of his income, as the term "income" is defined under the Internal Revenue Code (all of which transfers are collectively referred to herein as the "Income Transfers").  Defendant Douglas White has been transferring to defendant Rosalie White all or substantially all of his income since at least 1991 continuing through and including the present time, on an uninterrupted basis.

Throughout that period of time Douglas White has been transferring all or substantially all of his income to defendant Rosalie White, which income is and has been in the form of earned commissions on the sale of packaging equipment and/or other equipment, so earned by the defendant Douglas White as a sole proprietor acting as a so-called manufacturer's representative for various manufacturers/sellers of such equipment.  For the most part, those commissions were paid by checks issued by the respective manufacturers to defendant Douglas White and then endorsed and delivered by him to defendant Rosalie White, or negotiated (within the meaning of Article Three of the Uniform Commercial Code) by him to the defendant Rosalie White, and then deposited by defendant Rosalie White into a checking account that was titled in her name alone.  Those checking accounts were maintained with The Washington Trust Company and Liberty Bank.

The amount of the earned commissions so transferred by defendant Douglas White to defendant Rosalie White occurred periodically throughout each year in question, usually at least one check per month and frequently by multiple commission checks per month.  The account records of the bank accounts of defendant Rosalie White (a/k/a Lee White) with The Washington Trust Company and Liberty Bank, together with canceled checks produced by said banks in many cases, detail the frequency and amount of the transfers, and itemize the same.  The deposition transcripts of defendants Rosalie White and Douglas White also establish those monetary transfers for the years in question (although there are some deposits that Rosalie White was unsure about because they were "even dollar" amounts, and her recollection was that commission checks usually were in odd dollar amounts; canceled checks and defendant Douglas White's testimony revealed that commission checks were not infrequently in even dollar amounts, and so defendant Rosalie White's deposition understated the amount of transfers and, hence, damages.

The income transfers occurred in an approximate amount of $50,000.00 to $75,000.00 per year for the years 1991 through the present.  Over the past four years preceding the litigation, collectively there have been at least $275,255.19 in transfers, approximately $69,000.00 per year in income transfers from defendant Douglas White to defendant Rosalie White.  During that four-year period of time, additional check deposits of $40,000.00 into the bank accounts or

Rosalie White also could have been monetary transfers from defendant Douglas White, thus potentially raising the damages for that period to $315,255.00. In addition, during that four-year period of time, there were commission checks totaling approximately $35,050.82 that were negotiated by defendant Douglas White to defendant Rosalie White for which there appears to be no corresponding bank deposit, making damages for the four years preceding the commencement of the case between $310,000.00 and $350,000.00 (essentially the calendar years 1998-2001, inclusive). Adding $50,000.00 to $75,000.00 per year for the years 1991-1997 would add another $350,000.00 to $525,000.00 in asset transfers, for a total of $625,000.00 to $800,000.00, which effectively makes the judgment amount of $562,000.00 the ceiling on damages under the first count.

B. <u>Second Count: Constructive fraud type one</u>.

Under the theories of the second and third counts, both of which are constructive fraud theories, the plaintiff cannot go back any further than the four years immediately preceding the commencement of the cause of action. Plaintiff relies on the same facts as the first count (except the badges of fraud upon which the intent claim of the first count is predicated is immaterial to the second and third counts – other than insolvency, which is germane to the third count, and what, if anything, is received in exchange for the transfer – which is germane to both the second and third counts. In addition to these facts, plaintiff relies on the maintenance by defendant of

very little monies in his personal checking account, his payment of only a small portion of his

business expenses with the monies in his personal checking account and the payment of the

preponderance of the business expenses of his sole proprietorship by his wife from the writing of

checks drawn on her checking account (the account into which his commission checks were

deposited).  Also, plaintiff relies on the fact that no value was received by the defendant-

transferor in exchange for his transfers of his commission checks to his wife.  By this proof

plaintiff will have established that the transfers were made without defendant Douglas White

(the transferor) receiving reasonably equivalent value in exchange therefor, and at a time when

(i) he was engaged or about to engage in a business or transaction for which his remaining assets

were unreasonably small in relation to the business or transaction or, alternatively,  (ii) he

intended to incur, or believed or reasonably should have believed that he would incur, debts

beyond his ability to pay as they became due.

C.  Third Count: Constructive fraud type two.

Under the theories of the second and third counts, both of which are constructive fraud

theories, the plaintiff cannot go back any further than the four years immediately preceding the

commencement of the cause of action.  Plaintiff relies on the same facts as the first count (except

the badges of fraud upon which the intent claim of the first count is predicated is immaterial to

the second and third counts – other than insolvency, which is germane to the third count, and

what, if anything, is received in exchange for the transfer – which is germane to both the second and third counts.  In addition to these facts, plaintiff relies on the maintenance by defendant of very little monies in his personal checking account, his payment of only a small portion of his business expenses with the monies in his personal checking account and the payment of the preponderance of the business expenses of his sole proprietorship by his wife from the writing of checks drawn on her checking account (the account into which his commission checks were deposited).  Also, plaintiff relies on the fact that no value was received by the defendant-transferor in exchange for his transfers of his commission checks to his wife.  By this proof plaintiff will have established that the transfers were made without defendant Douglas White (the transferor) receiving reasonably equivalent value in exchange therefor, and that defendant Douglas White was insolvent at the time of such transfer or became insolvent as a consequence of such transfer.

7.    <u>Defendants' Contentions</u>.

Defendants contend that they never intentionally tried to avoid payment to creditors.  The payment process they had used for years was merely continued after the Glens Falls Realty business failed and Mr. White's sole source of income became commissions.  Money earned was used for current financial obligations for both Mr. and Mrs. White, including the payment of

utilities, credit cards and everyday living expenses. At no time prior to this lawsuit was any attempt made to execute on Mr. White's assets, including earned but unpaid commissions.

Defendants thus maintain that reasonably equivalent value, in particular the payment of joint living expenses and business expenses incurred by Mr. White, was given for each and every transfer to Mrs. White of his paychecks, and therefore there was no constructive fraud within the meaning of the fraudulent conveyance statute.

Defendants further maintain that the mere existence of a trust which benefits Mrs. White, and which existed before the 1997 judgment, does not have any relevance or relationship to this suit, and is not to be a factor in the case.

8.    **Legal Issues.**

Mixed issue of law and fact as to the first count: Is there clear, precise and unequivocal evidence from which the court reasonably may find, or infer, an intent by Douglas White to hinder, delay or defraud one or more of his creditors by means of the transfers in question?

Mixed issues of law and fact as to the second and third counts:

(1) Is there an agreement between husband and wife that he will turn his income over to her in exchange for her using his income to pay the mutual debts of the couple and, if so, then does such an agreement constitute receipt by the husband of reasonably equivalent value sufficient to defeat the plaintiff's claims in whole or in part?

(2) The commission checks have been, and continue to be, negotiated by the transferor-husband to the transferee-wife and deposited into a checking account titled solely in the name of the transferee, as to which the transferor has no signing authority. However, with a few minor exceptions, the proceeds of the commission checks have been, and continue to be, consistently used by the transferee for two principal purposes: (1) for the payment, by the transferee, of the collective expenses of the transferor-husband and transferee-wife's common life together; and (2) for the payment, by the transferee, of the business expenses of the transferor-husband's sole proprietorship. Can the actual use to which proceeds of the commission checks are put constitute the giving of value in exchange for the transfer of the commission checks? If so, then does either or both of the above-described uses of the proceeds of the commission checks constitute the giving of value in exchange for the transfer of the commission checks?

(3)    Is the standard of proof on the second and third counts mere preponderance of the evidence or clear and convincing evidence?

9.    **Voire Dire Questions.**

Inapplicable to this case.

10.    **List of Witnesses.**

Plaintiff's Witnesses:

(a)    Michele Harris, or other knowledgeable account officer, of The Cadle Company, 100 North Center Street, Newton Falls, Ohio, 44444.  Ms. Harris will testify with respect to the money judgment obtained by The Cadle Company against defendant Douglas C. White, including, but not limited to, the entry and amount of said judgment, together with interest accrued thereon, and that the same is wholly unsatisfied.  Business records with respect to the judgment and its amount will be authenticated and interpreted, and will be qualified for admissibility under the business records exception to the hearsay rule.  She also will testify about the corporate existence of The Cadle Company, and where it conducts its business, and authenticate documents relating thereto.

(b)    Douglas C. White, 53 Flat Rock Road, Old Lyme, Connecticut.  Defendant Douglas C. White will testify about his business endeavors and livelihood over a period of years, including, but not limited to, his failed packaging company in which he was a principal/owner with three other people, the real estate partnership (in which he was a partner) that owned the real property where the packaging company operated, the foreclosure of that real estate, which led to the substantial deficiency judgment by which plaintiff is his judgment creditor, his sole proprietorship as a manufacturer's representative (sales) for various and sundry companies, how the sole proprietorship operates, is managed and is financed as a business.  Mr. White will also testify about his and his wife's respective (and inter-related) financial affairs over a period of

years, including, but not limited to, the transfer of his income, the so-called "commission checks" to his wife, which were deposited, and continue to be deposited, by his wife into a bank account titled solely in her name, and her use of that money for a variety of purposes, including, but not limited to, the payment of the bulk of the business expenses for said sole proprietorship and the expenses of their common life together.  Examination of Mr. White will also be had of his assets and liabilities over a period of years (including, their identification, valuation and amount, respectively), to establish his insolvency, of his personal bank account into which only modest monies were deposited, except for brief buy/sale transactions of used packaging equipment, the net proceeds of which transactions were then transferred by him to his wife, defendant Rosalie White.  Other questionable transactions also will be examined, such as the sale of their Canterbury, Connecticut home to a trust established by his wife's aunt, the appointment of his own sister as the trustee of that trust, the sale of that home by the trust and the couple's relocation to another home selected by them and which was purchased by the trust, but which is insured by the defendants' as their own real property, and is maintained by them as their real property.  The purchase of a 35 foot sailboat in the name of defendant Rosalie White's then 91 year old mother also will be examined, inasmuch Douglas made the purchasing decision, hired the surveyor for the boat, signed the purchase and sale agreement and put many thousands of dollars of his own money towards that purchase, which purchase was made after the judgment

was entered against Douglas White.  The sailboat is used almost exclusively by the defendants, who maintain it, insure it, dock it, operate it, and pay registration fees and taxes on the boat, all at their own cost and expense.

(c)    Rosalie (a/k/a Lee) White, 53 Flat Rock Road, Old Lyme, Connecticut.  Defendant Rosalie White's testimony will cover the same subjects as the testimony of Defendant Douglas White, but will go into greater detail with respect to the banking and financial transactions, the transfer of the so-called "commission checks" and the payment of the business expenses of Mr. White's sole proprietorship by checks drawn on Mrs. White's account, into which the aforesaid commission checks were deposited.

Defendants' Witnesses:

a)  Douglas White.  Mr. White will testify as to the debt he incurred, the source of his income and the agreement with his wife as to the method of paying bills.  He will testify to the transparency of his commission arrangements and the nature of debts incurred in obtaining the commissions.  He will testify as to the use of his funds to purchase the home in which they live.

b)  Rosalie White.  She will testify to the agreement with Douglas White as to the payment of household and personal expenses and, using summary accounts will describe how the funds were and are being used.  She will also testify as to the existence of the Aronson Trust, the disposition of their property to the trust and her relationship with the trust.  She will describe

the purchase of the boat for her parents and her ownership interest in the boat and other assets. She will also testify as to their current ability to pay debts as they accrue.

11.     **Exhibits**.

Plaintiff's Exhibits:

1.     List of assets and liabilities for Defendant Douglas White and Rosalie White

2.     Deposition transcript for Judgment Debtor's Examination of Douglas White Dated September 21, 2001.

3.     Deposition of Rosalie (a/k/a Lee) White dated November 22, 2002.

4.     Deposition of Douglas White dated January 21, 2003.

5.     Washington Trust Company monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 1996 (including "spill over" portions of month preceding and post-dating calendar year 1996).

6.     Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 1996 (including "spill over" portions of month preceding and post-dating calendar year 1996).

7.    Washington Trust Company monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 1997 (including "spill over" portions of month preceding and post-dating calendar year 1997).

8.    Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 1997 (including "spill over" portions of month preceding and post-dating calendar year 1997).

9.    Washington Trust Company monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 1998 (including "spill over" portions of month preceding and post-dating calendar year 1998).

10.    Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 1998 (including "spill over" portions of month preceding and post-dating calendar year 1998).

11.    Washington Trust Company monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 1999 (including "spill over" portions of month preceding and post-dating calendar year 1999).

12.    Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 1999 (including "spill over" portions of month preceding and post-dating calendar year 1999).

13.    Washington Trust Company monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

14.    Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

371418

30