15. Washington Trust Company monthly bank statements for account held jointly in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1996 (including "spill over" portions of month preceding and post-dating calendar year 1996).

16. Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the joint bank account held in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1996 (including "spill over" portions of month preceding and post-dating calendar year 1996).

17. Washington Trust Company monthly bank statements for account held jointly in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1997 (including "spill over" portions of month preceding and post-dating calendar year 1997).

18. Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the joint bank account held in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1997 (including "spill over" portions of month preceding and post-dating calendar year 1997).

19.    Washington Trust Company monthly bank statements for account held jointly in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1998 (including "spill over" portions of month preceding and post-dating calendar year 1998).

20.    Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the joint bank account held in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1998 (including "spill over" portions of month preceding and post-dating calendar year 1998).

21.    Washington Trust Company monthly bank statements for account held jointly in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1999 (including "spill over" portions of month preceding and post-dating calendar year 1999).

22.    Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the joint bank account held in the names of Douglas White and Lee White (a/k/a Rosalie White) for 1999 (including "spill over" portions of month preceding and post-dating calendar year 1999).

23.    Washington Trust Company monthly bank statements for account held jointly in the names of Douglas White and Lee White (a/k/a Rosalie White) for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

24.    Washington Trust Company underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the joint bank account held in the names of Douglas White and Lee White (a/k/a Rosalie White) for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

25.    Liberty Bank monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

26.    Liberty Bank underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

27.   Liberty Bank monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 2001 (including "spill over" portions of month preceding and post-dating calendar year 2001).

28.   Liberty Bank underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 2001 (including "spill over" portions of month preceding and post-dating calendar year 2001).

29.   Liberty Bank monthly bank statements for account held in the name of Lee White (a/k/a Rosalie White) for 2002 (including "spill over" portions of month preceding and post-dating calendar year 2002).

30.   Liberty Bank underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Lee White (a/k/a Rosalie White) for 2002 (including "spill over" portions of month preceding and post-dating calendar year 2002).

31.  Liberty Bank monthly bank statements for account held in the name of Douglas White for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

32.  Liberty Bank underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Douglas White for 2000 (including "spill over" portions of month preceding and post-dating calendar year 2000).

33.  Liberty Bank monthly bank statements for account held in the name of Douglas White for 2001 (including "spill over" portions of month preceding and post-dating calendar year 2001).

34.  Liberty Bank underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Douglas White for 2001 (including "spill over" portions of month preceding and post-dating calendar year 2001).

35.  Liberty Bank monthly bank statements for account held in the name of Douglas White for 2002 (including "spill over" portions of month preceding and post-dating calendar year 2002).

36.    Liberty Bank underlying account transaction documents, including checks drawn on account, deposit slips for deposits into account and checks presented for collection (for deposit and credit to the account), all for the bank account held in the name of Douglas White for 2002 (including "spill over" portions of month preceding and post-dating calendar year 2002).

37.    Monthly billing statements for various credit card accounts for the calendar year 1999, including monthly billing statements for American Express, Chase Visa, and various gas credit cards.

38.    Monthly billing statements for various credit card accounts for the calendar year 2000, including monthly billing statements for American Express, Chase Visa, and various gas credit cards.

39.    Monthly billing statements for various credit card accounts for the calendar year 2001, including monthly billing statements for American Express, Chase Visa, and various gas credit cards.

40.    Monthly billing statements for various credit card accounts for the calendar year 2002, including monthly billing statements for American Express, Chase Visa, and various gas credit cards.

41.    Insurance policy for 53 Flat Rock Road, Old Lyme, Connecticut.

42.    Money judgment entered against, *inter alia*, Douglas C. White and in favor of The Cadle Company on or about April 21, 1997 in the amount of $317,854.10 in a civil action entitled The Cadle Company v.  Glen Falls Realty Partnership, et al., and bearing civil action number CV-96-0053687-S.

43.    Business records of The Cadle Company that reflects the absence of payment on the money judgment and the current amount due on the money judgment.

44.    Secretary of State of Ohio records showing that The Cadle Company is an Ohio corporation (including Articles of Incorporation, as the same may have been amended from time to time).

45.    Summary of the two defendants' business and financial activities and affairs, including, but not limited to, the tracing of Douglas White's commission checks and the proceeds thereof, banking transactions of the respective defendants (and their inter-relationship), and the transactions relating to the operation of defendant Douglas White's business, all for the year 1996.

46.    Summary of the two defendants' business and financial activities and affairs, including, but not limited to, the tracing of Douglas White's commission checks and the proceeds thereof, banking transactions of the respective defendants (and their inter-relationship),

and the transactions relating to the operation of defendant Douglas White's business, all for the year 1997.

47.    Summary of the two defendants' business and financial activities and affairs, including, but not limited to, the tracing of Douglas White's commission checks and the proceeds thereof, banking transactions of the respective defendants (and their inter-relationship), and the transactions relating to the operation of defendant Douglas White's business, all for the year 1998.

48.    Summary of the two defendants' business and financial activities and affairs, including, but not limited to, the tracing of Douglas White's commission checks and the proceeds thereof, banking transactions of the respective defendants (and their inter-relationship), and the transactions relating to the operation of defendant Douglas White's business, all for the year 1999.

49.    Summary of the two defendants' business and financial activities and affairs, including, but not limited to, the tracing of Douglas White's commission checks and the proceeds thereof, banking transactions of the respective defendants (and their inter-relationship), and the transactions relating to the operation of defendant Douglas White's business, all for the year 2000.

50.    Summary of the two defendants' business and financial activities and affairs, including, but not limited to, the tracing of Douglas White's commission checks and the proceeds thereof, banking transactions of the respective defendants (and their inter-relationship), and the transactions relating to the operation of defendant Douglas White's business, all for the year 2001.

51.    Summary of the two defendants' business and financial activities and affairs, including, but not limited to, the tracing of Douglas White's commission checks and the proceeds thereof, banking transactions of the respective defendants (and their inter-relationship), and the transactions relating to the operation of defendant Douglas White's business, all for the year 2002.

52.    Copies of commission checks initially payable to the order of Douglas White but deposited into bank accounts titled solely in the name of Rosalie White (a/k/a Lee White).

53.    Closing documents for the sale of 255 Cemetery Road, Canterbury, Connecticut to The Anne Fieldman Trust, with a closing on or about October 1, 1993 and a gross selling price of $213,500.00.

54.    Exclusive right to sell agreement, dated October 21, 1993, executed by Lee White on behalf of the Anne Fieldman Trust, promptly after the sale of the Cemetery Road property to the trust, listing the property for sale (by the trust) at the asking price of $297,000.00.

55.    January 1994 contract for the sale of the Cemetery Road property by the trust to third party at the price of $275,000.00.

56.    Documentation appointing Roslyn Duncan (sister of Douglas White) as trustee of the Anne Fieldman Trust).

57.    Trust Agreement for Anne Fieldman Trust.

58.    Deed of 53 Flat Rock Road, Old Lyme, Connecticut, to The Anne Fieldman Trust.

59.    Copy of complaint in 1996 civil action in which the money judgment against defendant Douglas C. White was obtained.

60.    Copy of the loan instrument upon which the judgment was entered against Douglas C. White.

11A.  Defendants' Exhibits.

Defendant intends to use Plaintiff's exhibits, in as much as they represent at full disclosure of the money transfers by the defendants.  Defendants reserve the right to substitute summary exhibits representing a compilation of plaintiff's exhibits.  Otherwise the exhibits, if listed herein, would be duplicates of plaintiff's.

**12.    Deposition Testimony.**

Deposition Testimony Proffered by Plaintiff:

Judgment debtor's examination of Douglas White dated September 21, 2001.

Designation of page references: 8, 9, 10, 11, 13, 14, 15,16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 69, 70, 71, 72, 73, 74, 75, 76, 77, 80, 81, 86, 87, 90, 91, 92, 93, 94, 95, 96, 97, 99, 100, 102, 103, 107, 108.

Deposition of Rosalie (a/k/a Lee) White dated November 22, 2002.  Designation of page references: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 19, 22, 23, 24, 26, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 96, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 142, 143, 144, 145, 146, 147, 148.

Deposition of Douglas White dated January 21, 2003.  Designation of page references: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20-59, 60-69, 73, 75, 76, 78- 99.

**13.    Requests for Jury Instructions.**

Inapplicable to this case, as it is a trial before the court.

14.    **Anticipated Evidentiary Problems.**

The parties presently do not anticipate any evidentiary problems, inasmuch as there will likely be no objection to the admissibility of documentary evidence other than on the ground of relevance; this case largely being a dispute of what facts may or may not be inferred from the subordinate facts and how the law ought to be applied to the facts. As to the records of The Washington Trust Company, Liberty Bank, and the records of the defendants concerning their respective accounts therewith, the parties stipulate to the authenticity of such documents and waive any hearsay objection with respect to such records.

15.    **Proposed Findings and Conclusions.**

A. Plaintiff's proposed findings and conclusions:

This civil action, commenced by complaint dated January 4, 2002, was brought in three counts under the Uniform Fraudulent Transfer Act as enacted in the State of Connecticut, Connecticut General Statutes Section 52-552a through 52-552l, inclusive. The first count is based on allegedly intentionally fraudulent conduct, and was brought under Connecticut General Statutes Section 52-552e (a)(1). The second count is based on allegedly constructively fraudulent conduct, and was brought under Connecticut General Statutes Section 52-552e (a)(2). The third count is also based on allegedly constructively fraudulent conduct, and was brought

under Connecticut General Statutes Section 52-552f. The court makes the following findings of fact and conclusions of law.

Plaintiff's Proposed Findings of Fact.

1. Plaintiff, The Cadle Company ("Cadle"), is an Ohio corporation with its principal place of business at 100 North Center Street, Newton Falls, Ohio.

2. Defendant, Douglas C. White ("Douglas White") is an individual residing at 53 Flat Rock Hill Road, Old Lyme, Connecticut.

3. Defendant, Rosalie A. White ("Rosalie White") is an individual residing at 53 Flat Rock Hill Road, Old Lyme, Connecticut.

4. This Court has jurisdiction over this action by virtue of the diversity of citizenship between the parties pursuant to 28 U.S.C. Section 1332. The amount in controversy exceeds the sum of $75,000.00.

5. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 because the defendants reside in this district.

6. Plaintiff is the judgment creditor of defendant Douglas White by virtue of, and pursuant to the terms and provisions of, a certain final judgment entered in a civil action formerly pending in the Superior Court for the Judicial District of Windham at Putnam, which civil action became known as The Cadle Company v. Glen Falls Realty Partnership, et al and

bearing civil action number CV-96-0053687-S, which judgment was entered on or about April 21, 1997 in the amount of $317,854.10, which includes costs, interest, taxes and additional fees (hereinafter collectively referred to as the "Judgment"). The indebtedness with respect to which the Judgment relates pre-dates 1991.

7. To this date, the Judgment remains unsatisfied, and, as of the present time, the Judgment, plus post-judgment interest from and after the entry of the Judgment up to and including the present time, remains due and owing to The Cadle Company from Douglas C. White. The accrued interest on the Judgment, as of August 9, 2004, is the sum of $244,922.52, to which additional interest continues to accrue at the per diem rate of $88.29. Thus, the amount of the outstanding judgment as of August 9, 2004 is the sum of $562,776.62, to which a per diem rate is applied from and after August 9, 2004.

8. Defendant Douglas White and defendant Rosalie White are husband and wife, respectively.

9. Defendants Douglas White and Rosalie White are not estranged, one from the other, and they currently live together as husband and wife, and have so lived together from and after the entry of the Judgment through and including the present time.

10. The defendant Douglas White is a manufacturer's representative, a sole proprietor who earns money solely on a commission basis from the various companies that he represents.

371418

44

These commissions are paid to Douglas White periodically by means of a check issued by the respective manufacturer and payable to the order of Douglas White in the amount of the earned commission.  Upon receipt of each of his commission checks, Douglas White endorses and delivers the commission check over to his wife, defendant Rosalie White (a/k/a Lee White), with the exception of a small number of commission checks in modest dollar amounts that he retains and deposits into his own checking account.

11.  Defendant Rosalie White deposits the endorsed commission checks into her checking account, an account maintained solely in her name and over which defendant Douglas White has no signatory authority (which account, over the years, has been maintained first with The Washington Trust Company and, thereafter, with Liberty Bank).

12.  The foregoing check negotiation and deposit pattern has continued, on an uninterrupted basis (with the exception of a  small amount of modest commission checks that were deposited by Douglas White into his own checking account), since at least 1991, and has continued up through and including the present time.

13.  Nothing was given by defendant Rosalie White to Douglas White, or otherwise received by Douglas White, in exchange for the foregoing check negotiations.  No property was transferred to Douglas White in exchange for the foregoing check negotiations and no antecedent debt of Douglas White was secured or satisfied in exchange for the foregoing check negotiations

(Douglas White was not even indebted to Rosalie White for there to have been any such security or satisfaction of antecedent debt).

14. Defendant Rosalie White uses the money in said account, in part, to pay the defendants' respective and collective living expenses of their common life together, which payments are made by checks drawn by her on said account. In addition thereto, most of the defendant-transferor's business expenses for his sole proprietorship are paid by the defendant-transferee, Rosalie White (a/k/a Lee White), by means of checks drawn by her on her aforesaid personal bank account, with defendant Douglas White writing personal checks on his checking account for only a modest amount of his overall business expenses. Thus, the proceeds of the commission checks are, with a few minor exceptions, used by the transferee for those two purposes.

15. The amount of the commission checks so endorsed and delivered by defendant Douglas White to defendant Rosalie White occurred periodically throughout each year in question, usually at least one check per month and frequently by multiple commission checks per month. The account records of the bank accounts of defendant Rosalie White (a/k/a Lee White) with The Washington Trust Company and Liberty Bank, together with her testimony (and/or the stipulated facts), and the photocopies of the commission checks deposited into her account and thus presented for collection by defendant Rosalie White (which copies were produced by said

banks in many cases), collectively detail the frequency and amount of the commission checks endorsed and delivered to Rosalie White by Douglas White, and itemize the same.

16.  The commission checks so received, endorsed and delivered by Douglas White to Rosalie White were in the collective amount of between $50,000.00 to $75,000.00 per year for the years 1991 through the present, although for some years the commission checks so endorsed and delivered by Douglas White to Rosalie White were higher than $75,000.00.

17.  Over the four years immediately preceding the filing of the complaint, collectively there has been at least $275,255.19 in commission checks received, endorsed and delivered by Douglas White over to Rosalie White and deposited by her into her checking account, or approximately $69,000.00 per year throughout that four-year period of time.  Additional check deposits of $40,000.00 into the bank accounts of Rosalie White that were not otherwise adequately explained by her also are found to be the earnings from commission income of Douglas White.  In addition, during that four-year period of time, there were commission checks totaling approximately $35,050.82 that were negotiated by defendant Douglas White to defendant Rosalie White but for which there appears to be no corresponding bank deposit, raising the total commission checks received, endorsed and delivered by Douglas White over to Rosalie White for the four years preceding the commencement of the case equal to the sum of $350,306.01 (essentially the calendar years 1998-2001, inclusive).

18.  There are seven years outside of the four years immediately preceding the commencement of the civil action for which Plaintiff also seeks recovery in the first count, the years 1991 through 1997, inclusive.  During each of those years, Douglas White received, endorsed and delivered over to Rosalie White between $50,000.00 to $75,000.00 per year in commission checks for the years 1991-1997, or an average of $62,500.00 per year.  This sum collectively is another $437,500 in commission checks over and above the amount in controversy for the four years prior to the commencement of the civil action.  This makes the sum total that is the subject of the first count, for all years in question, the sum of $787,806.01, which amount exceeds the Plaintiff's judgment debt by slightly more than $220,000.00.

19.  In the mid-1980s, defendant Douglas White formed a corporation with several other individuals, all of whom, including Douglas White, were managing shareholders of the business.  The business grew for a time, and the volume of business outgrew its facilities.  The shareholders then decided to form a partnership to purchase a new location to house the business facilities (Glen Falls Realty Partnership), which real property purchase was financed with a purchase money loan secured by a mortgage on the business premises.  The defendant Douglas White was an obligor on the corporate and real estate debt.

20.  The nature of the business was the packaging of products for and on behalf of manufacturers, which products would be packaged at the facility.  The preponderance of the

business was manufacturers' overflow, i.e., the packaging of products that the manufacturers could not handle themselves internally due to the volume of business. When the economy retracted in the late 1980s, manufacturers' sales volumes decreased to the extent that the outsourcing of product packaging substantially diminished (at least to the defendant's company), defendant's company suffered severe financial reversals as a consequence thereof, and closed its doors for good in the early 1990s. The real property that housed the business was foreclosed and a deficiency judgment was entered in connection therewith, which is the judgment on which the plaintiff's creditor status rests.

21. Prior to moving to Connecticut, the defendants owned successive residences in Massachusetts, which residences were always titled in their names jointly. Approximately one year after starting the company, the couple moved to Connecticut, to the real property commonly known as 255 Cemetery Road, Canterbury Connecticut. This property, into which the equity from the sale of the Massachusetts' home was put, was conveyed to defendant Rosalie White alone. Defendant Douglas White's salary was used in substantial measure to pay the mortgage debt.

22. Defendant Rosalie White in fact guaranteed some of the additional corporate borrowings that were incurred in an ultimately unsuccessful effort to salvage the business. In 1993, the Cemetery Road property was sold to a trust, the so-called Anne Fieldman Trust (of

which defendant Rosalie White is a beneficiary, together with her elderly mother), for the sum of $213,500.00, and the defendants continued to reside in said residence until 1998 under an informal arrangement with the trust.

23. Less than three weeks after the closing, defendant Rosalie White, purportedly on behalf of the trust, entered into a listing arrangement with a broker, listing the property for sale at the asking price of $297,000.00, nearly $84,000.00 greater than the sum paid for the property by the trust. A contract to sell that property was entered in early 1994 for the sum of $275,000.00, but a contingency making performance dependent on the purchaser's home caused that contract to fall through.

24. In 1998 the house was sold and the proceeds thereof were used to purchase the couple's current residence, 53 Flat Rock Road, Old Lyme, Connecticut. Title was taken in the name of the trust, the trustee of which is defendant Douglas White's sister (no relation to the settlor of the trust and the sister-in-law of trust beneficiary defendant Rosalie White). The defendants live there rent free, paying only the real estate taxes on the property, and that with the income received by them from renting a modest apartment that is attached to the home. The defendants insure the dwelling at 53 Flat Rock Road for at least $300,000.00 and the policy was issued in their names jointly as the owners of the real property.

25. In February of 1997, just prior to the entry of the $317,000.00 deficiency judgment against defendant Douglas White, a contract was entered into for the purchase of a used 35 foot sailboat in the approximate amount of $50,000.00. The $5,200.00 deposit was paid for by the funds in defendant Rosalie White's checking account (into which Douglas White's canceled checks were deposited). Defendant Douglas White selected the boat, negotiated the contract, and commissioned and paid for the boat "survey," signing the check for the survey despite not technically having signatory authority over the Rosalie White checking account. Title to the boat was taken in the name of Rosalie White's then 91 year old mother. The sailboat is docked at a marina near the defendants' home, and they are the ones who presently and, in the past, make use of it. The registration fee with the state is paid out of Rosalie White's checking account, and said account is used to pay the marina dues and other costs associated with the use and ownership of the boat.

26. Defendant Douglas White was insolvent throughout the period of time that he has transferred his income to his wife, from at least 1991 to the present. Throughout that period of time the defendant Douglas White has held no real property in his name, no financial investments in his name, and only very modest items of personal property. The only other items of personal property that he may have are the contingent fee commissions (i.e., the contract to receive a commission if the customer for the item fully pays the manufacturer therefor, at which

point in time the fee commission is paid to defendant Douglas White and then paid over by him to defendant Rosalie White). The amount of such contingent claims is negligible when compared to his liabilities. Throughout this period of time, Douglas White's liabilities greatly exceeded his assets.

27. Based on all of the facts set forth above and, in particular, the facts bearing on the so-called "badges of fraud," the court infers that all of the transactions by which Douglas White endorsed and delivered to defendant Rosalie White his commission checks, from 1991 to the present, were made with an intent, on the part of Douglas White, to hinder, delay or defraud creditors. The subordinate facts, upon which such inference is made, include, but are not limited to: Douglas White's dire financial circumstances (including the collapse of the packaging business), his pattern and practice of not holding title to any real property, or any significant personal property, in his name, the placing of each commission check beyond the reach of his creditors, the payment by the transferee, Rosalie White, of most of the business debts and expenses of Douglas White's sole proprietorship, with the Douglas White paying himself only a small amount of those expenses and keeping a personal checking account with only modest amounts of money, on which he mostly wrote only modest amounts of checks, and the questionable transactions with the residences and the 35 foot sailboat.

Plaintiff's Proposed Conclusions of Law.

1.  The UFTA defines the term "asset" to mean "property of a debtor" (with certain exceptions not here relevant).  Conn. Gen. Stat. Sec. 52-552b (2).  The UFTA defines the term "property" to mean "anything that may be the subject of ownership."  Conn. Gen. Stat. Sec. 52-552b (2).  The UFTA defines the term "debtor" to mean "a person who is liable on a claim."  Conn. Gen. Stat. Sec. 52-552b (6).  The UFTA defines the term "claim" to mean "a right to payment whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."  Conn. Gen. Stat. Sec. 52-552b (3) and (4).  The UFTA defines the term "transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance."  Conn. Gen. Stat. Sec. 52-552b (12).

2.  Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes: (a) that Douglas White is a debtor, within the meaning of the UFTA; (b) that the plaintiff is a creditor of Douglas White and has been so since at least 1991, within the meaning of the UFTA; (c) that the amount of the plaintiff's claim against the debtor presently is the sum of $562,776.62, (d) that each of the commission checks received by defendant Douglas White from the respective manufacturers constitutes an asset of Douglas White within the meaning of the UFTA; and (e) that the endorsement and delivery of each of the commission

checks by Douglas White over to defendant Rosalie White constitutes a transfer of an asset within the meaning of the UFTA.

3. Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes further, as to count one of the complaint: (a) that each of the foregoing transfers of assets by Douglas White to Rosalie White (by means of the endorsement and delivery of the commission checks) is fraudulent as to the plaintiff because plaintiff's claim arose before the transfers were made and Douglas White made the transfer with actual intent to hinder, delay or defraud one or more of his creditors; (b) that a judgment should enter in favor of the plaintiff and against defendant Rosalie White in the amount of the outstanding judgment debt of $562,776.62, inasmuch as the collective amount of all such transfers of assets exceed the outstanding amount of the judgment; (c) defendant Douglas White is enjoined from making any like transfers of assets in the future to any person, including, but not limited to, defendant Rosalie White; and (d) defendant Rosalie White is enjoined from receiving any like transfers of assets in the future.

4. Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes further, as to count two of the complaint: (a) that each of the foregoing transfers of assets by Douglas White to Rosalie White (by means of the endorsement and delivery of the commission checks), made within the four years immediately preceding the filing of the complaint, is fraudulent as to the plaintiff because plaintiff's claim arose before the transfers

were made and Douglas White made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and Douglas White (A) was engaged or was about to engage in a business or transaction for which the remaining assets of Douglas White were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due; (b) that a judgment should enter in favor of the plaintiff and against defendant Rosalie White in the aggregate amount of all such transfers occurring within the four years immediately preceding the commencement of the civil action, the amount of $350,306.01; (c) defendant Douglas White is enjoined from making any like transfers of assets in the future to any person, including, but not limited to, defendant Rosalie White; and (d) defendant Rosalie White is enjoined from receiving any like transfers of assets in the future.

5.  Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes further, as to count three of the complaint: (a) that each of the foregoing transfers of assets by Douglas White to Rosalie White (by means of the endorsement and delivery of the commission checks), made within the four years immediately preceding the filing of the complaint, is fraudulent as to the plaintiff because plaintiff's claim arose before the transfers were made, Douglas White made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and Douglas White was insolvent at the time of each transfer

or became insolvent as a result of each transfer; (b) that a judgment should enter in favor of the plaintiff and against defendant Rosalie White in the aggregate amount of all such transfers occurring within the four years immediately preceding the commencement of the civil action, the amount of $350,306.01; (c) defendant Douglas White is enjoined from making any like transfers of assets in the future to any person, including, but not limited to, defendant Rosalie White; and (d) defendant Rosalie White is enjoined from receiving any like transfers of assets in the future.

B.  Defendants' proposed findings and conclusions:

1.  Douglas and Rosalie White are husband and wife, having been married since 1972. They now live in Old Lyme, Connecticut. He is _____ years old.

2.  Over the course of his marriage to Mrs. White, Mr. White has regularly delivered to Mrs. White his salary/commission checks. Mr. White's income at all times relevant to this case has been these sales commissions from his work as a sales representative. Commissions were paid by check from manufacturers as they received payments from their customers, so payments were neither regular in time or amount.

3. From time to time, Mr. and Mrs. White have held both joint and individual bank accounts. At times relevant to this matter, Mr. White's principal accounts were joint accounts at Liberty Bank and Washington Trust. Mrs. White has had an account to which Mr. White is not a signatory at Liberty Bank since September 2000. That account was established because the Washington Trust bank branch was not conveniently located.

4. Upon receipt of commission checks from Mr. White, Mrs. White deposited those checks and used the proceeds to pay for the family household expenses such as food, shelter and clothing. Mrs. White also paid Mr. White's business expenses, including automobile, travel, lodging and miscellaneous expenses, many of which had been charged on credit cards. Mrs. White has not established any savings accounts, stock funds, retirement accounts or other holdings.

371418

56

5. Mr. White does not have, and has not acquired with any of his commissions, any accounts, real estate holdings or other assets held in his name or in the name of any third person. He has not established any trust or other vehicle by which another entity has promised to make future payments to him.  He did not retain control over any of the money transferred.

6. The delivery of commission checks by Mr. White to Mrs. White occurred without regard to the Cadle obligation, that is they commenced before and continued after the Cadle judgment entered.  No effort was made to conceal the fact that the commission checks were being turned over to Mrs. White.

7. The household bills of the White family combined, for which they had mutual benefit and or liability, rarely, if ever, were less than the amount of the commissions deposited.  Thus the transfer of any particular sum of money from commission checks either paid all or a portion of a bill that was due, i.e. a credit card with an existing balance, or was used to pay for ongoing living expenses including groceries and other expenses incurred from time to time during the contemporaneous period of time in which the transfer was made.

8. Mrs. White is the beneficiary of a trust that owns the house in which she and Mr. White now reside.  No part of the corpus of the trust came from Mr. White, and Mrs. White is neither the trustee nor sole beneficiary of the trust, which was established by her grandmother.

9. At a time prior to 1997 Cadle Company, plaintiff herein, acquired the note evidencing a business loan made by Mr. White and the collateral securing that loan.  After disposing of the collateral, Cadle obtained a deficiency judgment against Mr. White .no part of which has been paid by Mr. White, although a portion of the claim may be paid by another party to the transaction.  Of the co-debtors on the deficiency judgment, all but Mr. White have filed bankruptcy petitions.  No credit has been given for payments, if any, received since the date of the deficiency judgment.

10. Cadle has not attached or executed on, or attempted to execute on any of Mr. White's funds or commissions due.

11. To successfully avoid the transfer of the commission income to Mrs. White under C.G.S.§ 52-522f(a), Cadle is required to prove, by clear and convincing evidence, that Mr. White transferred his commissions to Mrs. White without receiving a reasonably equivalent value in exchange for the transfer and that he was insolvent at the time of the transfer or became insolvent as a result of the transfer.

13. Because Mrs. White was paying contemporaneously received and jointly incurred household bills and expenses with the money transferred to her by Mr. White, Mr. White received contemporaneous, reasonably equivalent value for the transfers made. Because of the size of his debt to Cadle, he was insolvent at the time of each transfer.

14. To successfully avoid the transfer of commission income to Mrs. White under C.G.S.§ 52-522f(b), Cadle is required to prove, by clear and convincing evidence, that Mr. White transferred his commissions to Mrs. White (an insider) for an antecedent debt, he was insolvent at the time of the transfer and Mrs. White had reasonable cause to believe that Mr. White was insolvent.

15. While Mrs. White may have known that the Cadle debt was greater than Mr. White's assets and that he was insolvent, the transfers were not made for an antecedent debt to her but for contemporaneous reasonably equivalent value.

16. To successfully avoid the transfer of commission income to Mrs. White under C.G.S.§ 52-552e(a), Cadle is required to prove, by clear and convincing evidence, that the transfer was made with actual intent to hinder, delay or defraud Mr. White's creditor, the Cadle Company.

17. There is no clear and convincing evidence transfers were made with the actual intent to hinder, delay or defraud Mr. White's creditor, The Cadle Company. Cadle could have attached or garnished any commissions due Mr. White, from time to time or could have garnished his accounts.

18. Because the payments made were in exchange for reasonably equivalent value, the payments are not voidable.

16.  **Trial time.**

Two days (maybe less).

17.  **Further Proceedings.**

No further pretrial proceedings are anticipated by the parties.

18.  **Election for Trial by Magistrate.**

The parties have agreed to a trial before the Honorable Thomas P. Smith, United States

Magistrate Judge, empowering him to make findings of fact and conclusions of law, and to enter

a final judgment of the District Court in this civil action, the parties hereto waiving their right to

have a judge who has been appointed under Article III of the United States Constitution preside

over the trial in the case, make the ultimate findings of fact and conclusions of law, and enter a

final judgment.

**PLAINTIFF,**
**THE CADLE COMPANY**

By _____
       Paul N. Gilmore, Esq.
       Updike, Kelly & Spellacy, P.C.
       One State Street
       P.O. Box 231277
       Hartford, CT  06123-1277
       Telephone Number: (860) 548-2600
       Federal Bar No.:  ct03347

371418

DEFENDANTS,
DOUGLAS WHITE AND ROSALIE A. WHITE

By _____
R. Bradley Wolfe
Fed. Bar No. ct 04332
Gordon, Muir and Foley, LLP
Ten Columbus Boulevard
Hartford, CT 06106
Telephone Number: (860) 525-5361
rbwolfe@gmflaw.com