UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3:02-CV-30 (TPS) |
| | : | |
| v. | : | |
| | : | |
| DOUGLAS WHITE and | : | |
| ROSALIE A. WHITE, | : | |
|     Defendants | : | |
| | : | FEBRUARY 3, 2006 |

## TRIAL BRIEF OF DOUGLAS AND ROSALIE WHITE

I.     BACKGROUND AND LEGAL ISSUES

    This is a case wherein a judgment creditor of Mr. White, plaintiff, Cadle Company, seeks to impose liability on Mrs. White as the recipient of fraudulent transfers, as defined by Connecticut law, for the underlying debt. Cadle alleges three alternate causes of action, intentional fraudulent transfer, transfer of assets while insolvent and transfer of assets that made Mr. White insolvent.

Mr. White is, and has been, a manufacturer's representative of packaging machinery since his former business, Compack Corporation, failed in early 1990 (Tx. p. 18). He is paid commissions on sales of machinery after the customer pays the manufacturer. Cadle Company has known the identity of the companies for which Mr. White works since he was deposed in late 2001. It has never made any effort to seize commissions due and payable directly from those companies.

Since 1970, Mr. White has turned his paychecks over to Mrs. White who pays the couple's bills, including obligations that are solely hers, solely his and joint obligations (Tx. p. 51). Since the late 1970's or early 1980's, she has had her own account (not a joint account) (Tx. p. 61). It is Cadle's contention that his transfer of his commission checks to Mrs. White, who then used them to pay their mutual living expenses, constitutes a fraudulent conveyance under the Uniform Fraudulent Transfer Act, C.G.S. § 52-522a to 522l. The defendants deny that the conveyances were fraudulent within the meaning of the Act because there was no intent to hinder, delay or avoid the debt and there was reasonably equivalent value for each of the transfers.

The first and second counts are brought pursuant to C.G.S. § 52-552e. To prevail on this count, the plaintiff must prove, by clear and convincing evidence (see Davenport v. Quinn, 730 A.2d 1184, 53 Conn. App. 282 (1999)), that the transfers were made with the actual intent to

avoid creditors. The proof may come through the so-called badges of fraud outlined in C.G.S. § 52-522e(b). In this case, the sole testimony offered was from Mr. White, although the testimony of Mrs. White was admitted by deposition. An examination of the "badges of fraud" does not lead to the conclusion that there was intent to hinder, delay or defraud any creditor of Mr. White.

It is true that the transfers complained of (commission checks) were made to an insider (C.G.S. § 52-522b(7)). The transfers were part of a pattern established when the defendants were first married. Mr. White, however, neither retained possession nor control of the funds transferred, as they were used to pay the expenses of living of the parties and were not invested, sequestered or hidden (Tx. p. 48). All of the transfers were disclosed, not hidden (see plaintiff's exhibits). The deposits were to local banking institutions and the amounts were readily ascertainable by The Cadle Company as the numerous checks and deposits that comprise thousands of pages demonstrate. The transfers were made, historically, before there was the threat of suit, and they continued to the present. Thus, the transfers were not made as a result of the threat that a creditor could seize the funds, but to comport with the practice the couple maintained for over 30 years. While the transfer of the commission checks constituted almost all of the Mr. White's assets, there was no indication that all his checks were so deposited and there was no evidence that any other assets were similarly transferred. Mr. White's presence in the courtroom and the lack of any evidence that he attempted to hide from Cadle proved that he did

not abscond. There is no evidence that he removed or concealed other assets. The timing of the transfers was not related to the debt collection of the Cadle Company, indeed it was related solely to the receipt of the funds from his accounts.

Thus, while there is evidence to find that some of the "badges of fraud" are present, under the present set of facts, and based on the testimony of and credibility of the witness and the documentation of the transfers, the Court finds that the plaintiff has failed to provide by clear and convincing evidence that the transfers in question were intended to hinder, delay or defraud the plaintiff.

The second count, also brought under § 52-522e, requires that there was no reasonably equivalent value received for the exchange <u>and</u> that the transferor was about to engage in a venture that might leave him insolvent or thought that he was going to engage in a venture for which he could not pay as debts became due. In effect, the plaintiff had to prove that the purpose of the transfer was a prophylactic step to avoid future creditors by the moving of assets from Mr. White to his wife so that if the venture failed, what he currently owned would be protected. Again, Cadle has the burden to prove that the transfer was made because that he was, or was about to, engage in a transaction which could leave him otherwise insolvent. Mr. and Mrs. White, on the other hand, have the burden to show that reasonably equivalent value was received for the transfer.

There was no evidence that Mr. White was engaged in or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. In fact, there was no evidence at all of the status of Mr. White with respect to the commissions and the expenses incurred in earning them, except to show that the Whites' monthly bills were paid out of the commissions earned, plus monies earned by Mrs. White, plus gifts from Mrs. White's mother.

The second prong of a claim under 52-522e involves proof that there was no reasonably equivalent value for the transaction and that Mr. White intended to incur debts beyond his ability to pay as they became due. In this case, the debt, the deficiency judgment against Mr. White, had already been incurred, so this portion of the statute is inapplicable. Further, however, reasonably equivalent value was received as the mutual living expenses of the parties were being paid from the transfers. Indeed, Cadle would have the Court put form over substance in this case. There is no question but that had Mr. White paid the numerous bills in question out of his personal checking account, there would be no claim of fraudulent transfer, since there would be a clear equivalent value given for each and every transfer. In this case, the use of an intermediary, based on a long practice between spouses, does not change the fact that the funds transferred were used for "proper" purposes. Again, there is no evidence that the funds were in any way

reserved for future use or permanently placed outside of the grasp of the plaintiff, which clearly had the resources to follow Mr. White's source of income generation and to intercept it.

The third count is brought under C.G.S. § 52-552f. Section (a) requires proof that there was no reasonably equivalent value for the transfer and the debtor was insolvent at the time of the transfer. The same logic applies as above and will not be repeated here.

II.     FACTUAL ISSUES

There is no evidence of the Whites' intent to avoid creditors. The pattern of Mrs. White using joint assets to pay all bills continued from the time the Whites were married into 1970 to the time when she suffered a serious stroke and was rendered virtually incapable. The commission checks in question were never concealed as to their source (Tx. p. 73). When asked, the identity of each manufacturer was disclosed. No attachment or garnishment of the commission was ever sought. The Whites have had little by way of assets, and have accumulated almost nothing over the last several years.

A critical issue in the first two counts is whether or not, as a matter of fact, there was "reasonably equivalent value" for the transfers made. This term must be examined based on the particular transfers made, and not on the overall practices of the parties. In re Carrozzella & Richardson, D.Conn.2002 279 B.R. 480. The evidence is that for each and every transfer (the

delivery of an endorsed commission check to Mrs. White), Mrs. White paid for the current living expenses that the couple had incurred in the prior days or weeks and would continue to accrue. There is no evidence that the funds were used to purchase assets which could either remain out of the reach of creditors or could grow as investments with the possible exception of $5,000 used to buy a boat titled in Mrs. White's mother's name, which was repaid by her (Tx. p. 75). Defendants maintain that this constitutes a contemporaneous value exchange.

In fact, the mechanical transfer to Mrs. White left the "assets" of Mr. White no more vulnerable than they had been when in the hands of the payors of the commission checks. In September 2001, plaintiff received from Mr. White, under oath, the names and addresses of all of the companies who he represented. As stated, no effort has ever been made to intercept those commissions.

Value is defined in C.G.S. § 52-552d. A transfer is made for present value if the exchange is intended to be, and is, contemporaneous. The payments made were for current living expenses of the two parties, including some expenses incurred by Mr. White for his sole benefit as business expenses, and some incurred by her in her business and for her personal use (Tx. p. 75). Indeed, as to the actual payments made, the money in Mrs. White's accounts came from multiple sources, his commission checks, her income, her mother and her aunt's trust of which she was a beneficiary (Tx. p. 77). Which funds were used for which purposes cannot be

ascertained by anyone since they were co-mingled, there was no proportioning agreement and no contemporaneous notes as to the use of the funds.

This case is factually unique in that the defendants have, and have had, no substantial assets during the entire period of Mr. White's indebtedness to either Cadle or its predecessors-in-title to the underlying debt. That debt was the note to purchase a parcel of commercial property in eastern Connecticut which was secured by a mortgage to Burritt Mutual Savings Bank (Plaintiff's Stipulations of Fact 6, 7 and 15). After both the business and the bank failed, plaintiff bought the note, foreclosed on the mortgage and now has a deficiency judgment against Mr. White. All other co-guarantors or makers of the note have declared bankruptcy and have been discharged. Plaintiff has made no effort to collect on the deficiency judgment aside from this attempt to reach Mrs. White's contingent assets.

III.   CONCLUSION

This case rests on the sole factual questions to whether or not the defendants' payment of living expenses after a "transfer" of his commission checks constitutes reasonably equivalent value. Before and after the checks came into his possession, Mr. and Mrs. White had mutual, current debts related to livings, i.e., credit card bills, utility and telephone bills, etc. Once the checks were negotiated, the mutual bills were paid, along with the current cash expenses such as

food.  If, as a matter of fact, each transfer was for reasonably equivalent value, then the finding must be for the defendants.

                              DEFENDANTS,
                              DOUGLAS WHITE AND ROSALIE A. WHITE


                              By_____
                                R. Bradley Wolfe
                                Gordon, Muir and Foley, LLP
                                10 Columbus Boulevard
                                Hartford, CT 06106
                                Telephone Number: (860) 525-5361
                                Fed. Bar No. ct 04332
                                rbwolfe@gmf.law.com

## **C E R T I F I C A T I O N**

      This is to certify that a copy of the foregoing was sent, via facsimile, to the following counsel of record on February 3, 2006:

Paul N. Gilmore, Esquire  
Updike, Kelly & Spellacy, PC  
One State Street  
PO Box 231277  
Hartford, CT 06123-1277

 

_____  
R. Bradley Wolfe

::ODMA\PCDOCS\DOCS\405673\2