26.    No property was transferred to Doug White by Lee White in exchange for the transfers of the commission checks, nor was there any satisfaction of indebtedness of Doug White to Lee White in connection therewith (indeed, there was no such indebtedness). Instead, by means of an informal arrangement or understanding between this long-standing couple, defendant Lee White used the proceeds of the commission checks to pay the defendants' respective and collective expenses of their common life together, their household expenses and the expenses of Doug White's business. Lee White had both actual and constructive knowledge of Doug White's poor financial circumstances and of his insolvency.

27. Based on all of the facts set forth above and, in particular, the facts bearing on the so-called "badges of fraud," the court infers that all of the transactions by which Douglas White endorsed and delivered to defendant Rosalie White his commission checks, from 1991 to the present, were made with an intent, on the part of Douglas White, to hinder, delay or defraud creditors. The subordinate facts, upon which such inference is made, include, but are not limited to: Douglas White's dire financial circumstances (including the collapse of the packaging business), his pattern and practice of not holding title to any real property, or any significant personal property, in his name, the placing of each commission check beyond the reach of his creditors, the payment by the transferee, Rosalie White, of most of the business debts and expenses of Douglas White's sole proprietorship, with the Douglas White paying himself only a

small amount of those expenses and keeping a personal checking account with only modest amounts of money, on which he mostly wrote only modest amounts of checks, and the questionable transactions with the residences, the 35 foot sailboat and certain commission checks that Doug White had issued to Lee White.

28.    Based on the facts set forth above, no reasonably equivalent value was given by defendant Lee White by Doug White in exchange for the asset transfers, and the assets were not taken by Lee White in good faith.

Plaintiff's Proposed Conclusions of Law.

1.    The UFTA defines the term "asset" to mean "property of a debtor" (with certain exceptions not here relevant). Conn. Gen. Stat. Sec. 52-552b (2). The UFTA defines the term "property" to mean "anything that may be the subject of ownership." Conn. Gen. Stat. Sec. 52-552b (2). The UFTA defines the term "debtor" to mean "a person who is liable on a claim." Conn. Gen. Stat. Sec. 52-552b (6). The UFTA defines the term "claim" to mean "a right to payment whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Conn. Gen. Stat. Sec. 52-552b (3) and (4). The UFTA defines the term "transfer" to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of

or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Conn. Gen. Stat. Sec. 52-552b (12).

2.     Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes: (a) that Douglas White is a debtor, within the meaning of the UFTA; (b) that the plaintiff is a creditor of Douglas White and has been so since at least 1991, within the meaning of the UFTA; (c) that the amount of the plaintiff's claim against the debtor presently is the sum of $609,835.19, (d) that each of the commission checks received by defendant Douglas White from the respective manufacturers constitutes an asset of Douglas White within the meaning of the UFTA; and (e) that the endorsement and delivery of each of the commission checks by Douglas White over to defendant Rosalie White constitutes a transfer of an asset within the meaning of the UFTA that was made at the time of such endorsement and delivery.

3.   Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes further, as to count one of the complaint: (a) that each of the foregoing transfers of assets by Douglas White to Rosalie White (by means of the endorsement and delivery of the commission checks) is fraudulent as to the plaintiff because plaintiff's claim arose before the transfers were made and Douglas White made the transfer with actual intent to hinder, delay or defraud one or more of his creditors; (b) that defendant Rosalie White, the initial transferee of all

such transfers, did not establish the two elements of her affirmative defense, to wit: she failed to establish that she took the transferred assets in good faith and for a reasonably equivalent value; (c) that a judgment should enter in favor of the plaintiff and against defendant Rosalie White in the amount of the outstanding judgment debt of $609,835.19, inasmuch as the collective amount of all such transfers of assets exceed the outstanding amount of the judgment; (c) defendant Douglas White is enjoined from making any like transfers of assets in the future to any person, including, but not limited to, defendant Rosalie White; and (d) defendant Rosalie White is enjoined from receiving any like transfers of assets in the future.

4. Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes further, as to count two of the complaint: (a) that each of the foregoing transfers of assets by Douglas White to Rosalie White (by means of the endorsement and delivery of the commission checks), made within the four years immediately preceding the filing of the complaint (and thereafter), is fraudulent as to the plaintiff because plaintiff's claim arose before the transfers were made and Douglas White made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and Douglas White (A) was engaged or was about to engage in a business or transaction for which the remaining assets of Douglas White were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed  that he would incur, debts beyond his ability to pay

422251v8                                          55

as they became due; (b) that a judgment should enter in favor of the plaintiff and against defendant Rosalie White, the initial transferee of all such transfers, in the aggregate amount of all such transfers occurring within the four years immediately preceding the commencement of the civil action, the amount of $251,922.66, together with the transfers from and after the commencement of the action in the additional amount of $39,213.79, for a total judgment amount of $291,136.45; (c) defendant Douglas White is enjoined from making any like transfers of assets in the future to any person, including, but not limited to, defendant Rosalie White; and (d) defendant Rosalie White is enjoined from receiving any like transfers of assets in the future.

5. Based on the foregoing statutory definitions, and the facts found as recited above, the court concludes further, as to count three of the complaint: (a) that each of the foregoing transfers of assets by Douglas White to Rosalie White (by means of the endorsement and delivery of the commission checks), made within the four years immediately preceding the filing of the complaint (and thereafter), is fraudulent as to the plaintiff because plaintiff's claim arose before the transfers were made, Douglas White made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and Douglas White was insolvent at the time of each transfer or became insolvent as a result of each transfer; (b) that a judgment should enter in favor of the plaintiff and against defendant Rosalie White, the initial transferee, in the aggregate amount of all such transfers occurring within the four years immediately preceding the

commencement of the civil action, the amount of $251,922.66, together with the transfers from and after the commencement of the action in the additional amount of $39,213.79, for a total judgment amount of $291,136.45; (c) defendant Douglas White is enjoined from making any like transfers of assets in the future to any person, including, but not limited to, defendant Rosalie White; and (d) defendant Rosalie White is enjoined from receiving any like transfers of assets in the future.

Respectfully submitted, this 3rd day of February, 2006.

PLAINTIFF, THE CADLE COMPANY

By: _____

PAUL N. GILMORE, ESQ.
Fed. Bar No. ct 03347
UPDIKE, KELLY & SPELLACY, P.C.
One State Street
P.O. Box 231277
Hartford, CT 06123-1277
Tel.: (860) 548-2600
Fax:  (860) 548-2680
pgilmore@uks.com

**CERTIFICATION OF SERVICE**

This is to certify that on the 3rd day of February, 2006, the undersigned did cause to be

sent, via courier, a copy of foregoing to:

R. Bradley Wolfe, Esq.
Gordon, Muir & Foley, LLP
Ten Columbus Blvd.
Hartford, CT 06106

PAUL N. GILMORE, ESQ.
Updike, Kelly & Spellacy, P.C.

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 9679**

*2004 U.S. Dist. LEXIS 9679, \**

QUANTAM SAIL DESIGN GROUP, LLC, Plaintiff, v. LIBERTY ENTERPRISES, INC., d/b/a/ QUANTUM EASTERN LONG ISLAND SOUND, LIBERTY SERVICES, LLC, DEBORAH LIBERTY and SAIL REPAIR COMPANY, Defendants.

CIV. NO. 3:03cv281 (WWE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 9679

March 26, 2004, Decided

**DISPOSITION:** Plaintiff's motion for order of attachment and levy denied without prejudice.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff creditor filed a motion for order to attach and levy certain property that defendant debtor transferred to defendant transferee alleging the transfer was a fraudulent conveyance that could be avoided pursuant to the provisions of the Uniform Fraudulent Transfer Act (UFTA), Conn. Gen. Stat. § 52-552a et seq.

**OVERVIEW:** The creditor brought an action against the debtor and its president seeking damages for the breach of a franchise agreement and the debtor's failure to pay a debt. The creditor recovered a default judgment against the debtor and was awarded damages, attorney's fees, and costs. The debtor did not pay any portion of the judgment. The debtor transferred certain assets to the transferee, a newly formed company owned by the president's wife. The creditor filed an action pursuant to UFTA alleging the debtor had fraudulently transferred the assets in order to avoid payment on the default judgment. The court granted a second default judgment in the creditor's favor when the debtor failed to defend the action. The creditor then filed a motion for order to attach and levy the property. The court denied the motion without prejudice to refiling after discovery was completed. The transferee filed a timely answer and had not been fully heard on its statutory defenses. The parties had raised a question of fact about good faith, which was a statutory defense to a fraudulent transfer claim. If established, further discovery on the issue of payment of reasonably equivalent value was to be ordered.

**OUTCOME:** The court denied the creditor's motion for order to attach and levy the property without prejudice to refiling at the conclusion of discovery on the transferee's affirmative defense of good faith.

**CORE TERMS:** transferee, default judgment, transferred, discovery, fraudulently, transferor, attachment, fraudulent transfer, debt owed, assets transferred, Uniform Fraudulent Transfer Act, question of fact, right to retain, amounts owed, fraudulent, good-faith, accounting, reduction, inclusive, itemized, voidable, levy, deposition testimony, course of business, motion to compel, deposition

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Real & Personal Property Law > Fraudulent Transfers 

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers

*HN1* Under Connecticut law, a creditor who prevails in a fraudulent conveyance action may avoid a transfer to the extent necessary to satisfy the creditor's claim. Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552h (2002). More Like This Headnote

Real & Personal Property Law > Fraudulent Transfers

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers

*HN2* See Conn. Gen. Stat. § 52-552h (2002).

Real & Personal Property Law > Fraudulent Transfers

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers

*HN3* A creditor may attach property which has been fraudulently conveyed by his debtor as though no conveyance had been made. More Like This Headnote

Real & Personal Property Law > Fraudulent Transfers

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers

*HN4* Under the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a et seq., a transferee acting in good faith has a statutory defense to a fraudulent transfer claim. More Like This Headnote

Real & Personal Property Law > Fraudulent Transfers

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers

*HN5* See Conn. Gen. Stat. § 52-552i.

Civil Procedure > Jury Trials > Province of Court & Jury

Real & Personal Property Law > Fraudulent Transfers

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers

*HN6* The Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a et seq., does not define the term good faith; however, Connecticut courts have borrowed from bankruptcy law where, in order to prove good faith, the transfer must have occurred in an arms-length bargain, and the transferee must have no intent to, or knowledge of the fact that transaction will, hinder, delay, or defraud others. Whether a transferee has acted in bad faith is a question of fact for the trier of fact. More Like This Headnote

Real & Personal Property Law > Fraudulent Transfers

Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers

*HN7* The plain language of the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a et seq., provides that a transferee acting in good faith has a defense to a

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 9675    Page 10 of 26

Case 3:02-cv-01434-TPS   Document 23   Filed 02/03/2006   Page 3 of 7

fraudulent transfer claim.  More Like This Headnote

Civil Procedure > Early Pretrial Judgments > Default > Entry of Default & Default Judgment 🗔

Real & Personal Property Law > Fraudulent Transfers 🗔

Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers 🗔

*HN8*⚖ Under the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a et seq., in a case in which default judgment has been entered against a transferor, a transferee who has filed a timely answer to the complaint must be afforded an opportunity to litigate the affirmative defenses provided by the statute.  More Like This Headnote

Real & Personal Property Law > Fraudulent Transfers 🗔

Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers 🗔

Evidence > Procedural Considerations > Burdens of Proof 🗔

*HN9*⚖ The Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a et seq., provides that a transferee must establish both good faith and the payment of reasonably equivalent value in order to defend against a fraudulent transfer claim.  More Like This Headnote

**COUNSEL:** **[*1]** For Quantum Sail Design Group, LLC, Plaintiff: Timothy Andrew Diemand, Wiggin & Dana-Htfd, Hartford, CT.

For Liberty Svc LLC, Deborah Liberty, Sail Repair Co, Defendants: Richard F. Paladino, Gozzi Paladino & Welsh, Old Saybrook, CT.

**JUDGES:** HOLLY B. FITZSIMMONS, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** HOLLY B. FITZSIMMONS

**OPINION:** RULING on MOTION FOR ORDER

Plaintiff filed the instant action on February 14, 2003, pursuant to the Uniform Fraudulent Transfer Act ("UFTA"), Conn. Gen. Stat. §§ 52-552a, et seq. (2002), alleging that defendant Liberty Enterprises fraudulently transferred assets to defendant Liberty Services in order to avoid payment on a debt owed by Liberty Enterprises to plaintiff as the result of a default judgment in a prior proceeding. See Quantam Sail Design Group v. Liberty Enterprises, et al., 3:02cv1434 (PCD). On July 21, 2003, the court granted a second default judgment in plaintiff's favor against Liberty Enterprises, and ordered plaintiff to provide an itemized accounting of the amounts owed to plaintiff [doc. # 14]. Pending before the court is plaintiff's motion for order to attach and levy the property that Liberty Enterprises **[*2]** fraudulently transferred to defendant Liberty Services [doc. # 15]. For the reasons below, plaintiff's motion for order [**doc. # 15**] is **DENIED WITHOUT PREJUDICE TO REFILING.**

Factual Background

On August 16, 2002, the plaintiff, Quantam Sail Design Group ("Quantam"), brought an action in the U.S. District Court for the District of Connecticut against Liberty Enterprises and its president, Billy Liberty. See Quantam Sail Design Group v. Liberty Enterprises, et al., 3:02cv1434 (PCD). Quantam sought damages for the breach of a franchise agreement

between Liberty Enterprises and Quantam, including the failure of Liberty Enterprises to pay Quantam a debt in excess of $ 110,000. [Pl.'s Mot. at 2.] On September 26, 2002, the court granted Quantam's motion for default against Liberty Enterprises, and on January, 31, 2003, after an evidentiary hearing, Judge Dorsey awarded Quantam $ 218,320.74 in damages, $ 6,500 in attorney's fees, and $ 236.79 in costs. Id.

As of the date of the filing of this motion, Liberty Enterprises had not paid any portion of the judgment. On October 16, 2002, Liberty Enterprises transferred assets, including furniture, equipment, **[*3]** and other personalty, to Liberty Services, a newly formed company owned by Debra Liberty, the wife of Billy Liberty, for $ 11,000. [Pl.'s Mot. at Ex. B.] At her deposition, Debra Liberty testified that, in addition to the items listed in the contract, she also purchased hardware and inventory from Liberty Enterprises listed in "the appraisals." [Pl.'s Mot. at Ex. C, Ex. D.] At her deposition, Debra Liberty also testified that she purchased the assets of Liberty Enterprises because Liberty Enterprises owed a sizeable debt to Quantam. [Pl.'s Mot. at Ex. C.]

Defendant Liberty Services filed an answer to the complaint on April 15, 2003, asserting defenses including the payment of reasonably equivalent value, good faith, and transfer made in the ordinary course of business [doc. # 9]. Liberty Enterprises did not defend the action, and a default judgment was entered by Judge Eginton in favor of the plaintiff on July 14, 2003. Plaintiff was ordered to submit an itemized accounting of the amounts owed. Accordingly, Plaintiff submits the following:

1) January 31, 2003 Judgment (Ex. A) $ 225,057.74

2) Interest on Judgment (2/1/03 - 7/31/03) $ 11,253.00

3) Costs of this **[*4]** action (Ex. E) $ 4,403.96

**TOTAL $ 240,714.70**

In this action, plaintiff seeks: (a) an order voiding the transfer of Liberty Enterprises assets and business to Liberty Services; (b) an attachment of all of the transferred assets (and or/an attachment of the proceeds of the sale of these assets); (c) a levy of execution on all assets of Liberty Enterprises subject to levy, including assets transferred to Liberty Services.

STANDARD OF LAW

*HN1* Under Connecticut law, a creditor who prevails in a fraudulent conveyance action may avoid a transfer to the extent necessary to satisfy the creditor's claim. Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552h (2002). The statute provides, in relevant part:

> (a) *HN2* In an action for relief against a transfer or obligation under sections 52-552a to 52-552l, inclusive, a creditor, subject to the limitations in section 52-552i, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim, (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed **[*5]** by chapter 903a...

Conn. Gen. Stat. § 52-552h.

Get a Document - by Citation - 2004 U.S. Dist. LEXIS 9675          Page 12 of 26

Case 3:02-cv-00030-TPS    Document 61-8    Filed 02/03/2006    Page 5 of 7

In other words, *HN3* "[a] creditor may attach property which has been fraudulently conveyed by his debtor as though no conveyance had been made." Chemical Bank v. Dana, 234 B.R. 585, 595 (D.Conn. 1999); Olin Corporation v. Castells, 180 Conn. 49, 52, 428 A.2d 319 (1980).

*HN4* Under the UFTA, a transferee acting in good faith has a statutory defense to a fraudulent transfer claim. The statute states, in relevant part:

> (a) *HN5* A transfer or obligation is not voidable under subdivision (1) of subsection (a) of section 52-552e against a person who took in good faith and for a reasonably equivalent value.

> (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under subdivision (1) of subsection (a) of section 52-552h, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (d) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against: (1) The first transferee of the asset or the person for whose **[*6]** benefit the transfer was made, or (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee

> . . .

> (d) Notwithstanding voidability of a transfer or an obligation under sections 52-552a to 52-552l, inclusive, a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to (1) a lien on or a right to retain any interest in the asset transferred; (2) enforcement of any obligation incurred; or (3) a reduction in the amount of the liability on the judgment.

Conn. Gen. Stat. § 52-552i.

*HN6* The UFTA does not define the term good faith; however, Connecticut courts have borrowed from bankruptcy law where, in order to prove good faith, the transfer must have occurred in an arms-length bargain, and the transferee must have no intent to, or knowledge of the fact that transaction will, hinder, delay, or defraud others. Yolen v. Wright, 2003 Conn. Super. LEXIS 1754, at *2 (Conn. Super. 2003)(citing Bankruptcy. Code, 11 U.S.C.A. § 548 (c); In re Colonial Realty Co., 210 B.R. 921 (1997). **[*7]** Whether a transferee acted in bad faith is a question of fact for the trier of fact. Zapolsky v. Sacks, 191 Conn. 194, 464 A.2d 30 (1983).

## DISCUSSION

At oral argument on a related pending discovery matter, counsel for the parties discussed the issues presented by the instant motion. Plaintiff contends that the default judgment entered against Liberty Enterprises by the court in this action establishes that the transfer of the assets to Liberty Services was fraudulent as a matter of law and that, as a judgment creditor, plaintiff is entitled to an attachment of the fraudulently transferred assets pursuant to the UFTA. Plaintiff argues that as a result of the default judgment, Liberty Services is not entitled to raise affirmative defenses as to whether the transfer was fraudulent. Plaintiff also argues that Debra Liberty's deposition testimony that she knew of the debt owed to plaintiff by

Liberty Enterprises before the transfer precludes any good faith defense. Plaintiff's position is that, at most, Liberty Services may be entitled to a lien on the property in the amount of $ 11,000 - the amount paid by Debra Liberty to her husband for the purchase of all **[*8]** the assets. [Pl.'s Reply Mem. at 3.]

Defendant Liberty Services argues, on the other hand, that the default judgment was rendered only against the transferor, Liberty Enterprises and that, as a transferee, it is entitled to assert its own affirmative defenses of good faith, payment of reasonably equivalent value, and transfer made in the ordinary course of business. Liberty Services contends that it is entitled to discovery on its affirmative defenses. Additionally, Liberty Services asserts that, under the UFTA, plaintiff may only recover judgment for the value of the assets transferred at the time of the transfer, adjustment to the extent of value given for the transfer and the right to retain a lien or interest in the assets transferred, or a reduction in the amount of liability in any judgment, and other equitable considerations. [Def. Mem. at 3rd un-numbered page.]

*HN7* The plain language of the UFTA provides that a transferee acting in good faith has a defense to a fraudulent transfer claim. See Conn. Gen. Stat. § 52-552h. There is no precedent under Connecticut law for plaintiff's assertion that a default judgment entered against the transferor **[*9]** in an action under the UFTA automatically extinguishes the right of a transferee to litigate its affirmative defenses. *HN8* Under the UFTA, in a case in which default judgment has been entered against a transferor, a transferee who has filed a timely answer to the complaint must be afforded an opportunity to litigate the affirmative defenses provided by the statute. In this case, the transferee, Liberty Services, has filed a timely answer and has not yet had the opportunity to be fully heard on its statutory defenses. Because the court has determined that Liberty Services is entitled to present its statutory defenses, the court orders limited discovery and denies plaintiff's motion without prejudice to refiling at the conclusion of discovery. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The fact that the transferee and transferor in this case are husband and wife has not been lost on the court. However, this fact alone does not provide grounds to deprive the transferee of the right to present a defense.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

*HN9* The UFTA provides that a transferee must establish **[*10]** both good faith and the payment of reasonably equivalent value in order to defend against a fraudulent transfer claim. The parties have raised a question of fact about the good faith element, based upon Debra Liberty's deposition testimony that she knew about the debt owed by Liberty Enterprises to the plaintiff prior to the transfer of the assets. The court orders further proceedings solely on the issue of whether Liberty Services acquired the transferred property from Liberty Enterprises in good faith. If Liberty Services' good faith is established, the court will order further discovery on the issue of payment of reasonably equivalent value. Accordingly, the court orders limited discovery solely on the issue of Liberty Services' good faith defense to be completed on or before April 16, 2004. The parties may file supplemental briefs on this issue on or before Monday, May 7, 2004.

In light of this ruling, the parties shall endeavor to resolve the discovery dispute giving rise to defendant's motion to compel [doc. # 19]. The parties shall contact the court via telephone within five (5) days of the docketing of this ruling in order to report on the status of these efforts. If the **[*11]** parties are unable to resolve the issues raised by defendant's

Case 3:02-cv-02020-TPS     Document 22     Filed 02/03/2006

motion to compel, a ruling shall issue.

CONCLUSION

For the reasons discussed above, plaintiff's motion for order [**doc. # 15**] is **DENIED WITHOUT PREJUDICE TO REFILING** at the conclusion of discovery on Liberty Services' affirmative defenses.

SO ORDERED at Bridgeport this 26th day of March 2004.

HOLLY B. FITZSIMMONS

UNITED STATES MAGISTRATE JUDGE

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 9679**
View: Full
Date/Time: Wednesday, January 18, 2006 - 4:49 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®     About LexisNexis  |  Terms & Conditions
Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

faith.[29] Indeed, the presence of any circumstance placing the transferee on inquiry as to the financial condition of the transferor may be a contributing factor in depriving the former of any claim to good faith unless investigation actually disclosed no reason to suspect financial embarrassment.[30] Thus, a transfer that embraces the bulk of the debtor's inventory or stock in business has been considered to give rise to a presumption of knowledge of the transferor's financially depressed circumstances.[31]

The effect of knowledge or belief in the financial stringency of the transferor as an element of the transferee's good faith varies inversely with

[29] *See, e.g.,* United States v. Tabor Court Realty Corp., 803 F.2d 1288, 1296 (3d Cir. 1986), *cert. denied, sub nom.* McClellan Realty Co. v. United States, 483 U.S. 1005, 107 S.Ct. 3229, 97 L. Ed. 2d 735 (1987) (transferee not in good faith, for purposes of §§ 3 and 4 of UFCA, when it knew that transfer would render debtor insolvent and that debtor would receive no consideration); Seligson v. New York Produce Exch., 394 F. Supp. 125 (S.D.N.Y. 1975) (when transferee "was at least aware of [transferor's] precarious position in the market" and "made no showing of good faith," trustee in bankruptcy "raised a genuine issue of material fact as to the [transferee's] good faith"). *But see* Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 249 (2d Cir. 1987) (lender enters into loan transaction in good faith, under UFCA, when it extends funds with knowledge of borrower's precarious financial situation, if loan is made with knowledge that funds will be used to repay indebtedness of creditors, and does "not adversely affect the debtor's balance sheet nor encumber [debtor's] ability to meet its other obligations."). *See also* Clark, *The Duties of The Corporate Debtor to Its Creditors,* 90 Harv. L. Rev, 505, 508-09 (1977); 11 U.S.C. § 548(d)(2)(B).

[30] Jobin v. McKay (*In re* M & L Business Machine Co., Inc.), 84 F.3d 1330, 1338 (10th Cir. 1996) (good faith should be measured objectively, and is lacking if circumstances would place a reasonable person on inquiry of debtor's fraudulent purpose, and a diligent inquiry would have discovered such purpose); Brown v. Third Nat'l Bank, 67 F.2d 1348, 1355, 34 C.B.C.2d 655 (8th Cir. 1995) (look to what transferee objectively knew or should have known rather than transferee's actual knowledge from subjective standpoint). *See* Doyle v. Paolino (*In re* Energy Savings Center, Inc.), 61 B.R. 732, 736 n.4 (E.D. Pa. 1986), *citing Treatise, aff'd,* 810 F.2d 1162 (3d Cir. 1987). *See also* Tacoma Ass'n of Credit Men v. Lester, 72 Wash. 2d 453, 433 P.2d 901 (1967) (transferee must show "(1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of, the fact that the activities in question will hinder, delay or defraud others."). *See generally* Note, *Good Faith and Fraudulent Conveyances,* 97 Harv. L. Rev. 495 (1983).

[31] *See, e.g.,* Walburn v. Babbitt, 83 U.S. 577, 21 L. Ed. 489 (1873) (arising under Section 35 of Act of 1867); Dokken v. Page, 147 F. 438 (8th Cir. 1906); *In re* Baker, 13 F.2d 413 (S.D. Cal. 1926); Johnston v. Forsyth Mercantile Co., 155 F. 268 (S.D. Ga. 1907); Potter v. Walker, 2 F.2d 774 (E.D.N.Y.), *aff'd,* 2 F.2d 1020 (2d Cir. 1924); Bentley v. Young, 210 F. 202 (S.D.N.Y. 1914), *aff'd,* 223 F. 536 (2d Cir. 1915). *Cf.* McWilliams v. Edmonson, 162 F.2d 454 (5th Cir. 1947), *cert. denied,* 332 U.S. 835, 68 S. Ct. 216, 92 L. Ed. 408 (1947), in which the debtor had transferred every piece of property he owned to his wife's sister, allegedly as a distribution of partnership profits. Under section 544(b), a trustee can also attack transfers voidable under state bulk sales laws. *See* Limperis v. Kolancy (*In re* Chicago Music Corp.), 36 B.R. 626 (Bankr. N.D.

**550-23**        **LIABILITY OF TRANSFEREE**        **¶ 550.03[2]**

**[2]—Good Faith.**

The Code does not define "good faith," but courts have long defined this term under prior law. As one court, quoting a classic treatise, defined it: "The question is solely whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors."[6]

It would appear that what is to be considered is the good faith of the transferee, not the intent of the transferor.[7] The courts have found a lack of good faith in a variety of factual circumstances, including where the transferee had knowledge of the transferor's unfavorable financial condition at time of transfer;[8] a bank had knowledge of the unfavorable financial condition of the debtors and financed insiders' purchase of the debtors' property for less than full value;[9] a receiver did not give value for a failed bank's assets and had at least constructive notice of avoidability of transfers;[10] and the transfer was to an insider with control over corporation finances.[11]

A growing body of case law has applied an objective standard for good faith of a transferee under section 548(c) of the Code, particularly in the instance of a Ponzi scheme. In the context of investors being promised unusually large returns under a Ponzi scheme, the court ruled that "a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency."[12] The Court of Appeals for the Eighth Circuit, in the decision on which the Tenth Circuit relied for application of an objective standard for good faith under section 548(c), found that the additional requirement of knowledge under

---

[6] *In re* Messenger, 32 F. Supp. 490 (E.D. Pa. 1940) (quoting Glenn, Fraudulent Conveyances § 295 (1931)).

[7] *See generally* 4 Collier on Bankruptcy, ¶ 67.33, at 506 n.5 (Matthew Bender 14th ed. 1978) (construing Section 67d(1)(e) of the former Bankruptcy Act). *See also* Friedman v. Vinas (*In re* Trauger), 109 F.R. 502, 505 (Bankr. S.D. Fla. 1989) ("good faith exemption of 550(b)(1) was intended for those situations in which a bad faith transferee materially assists in, or in fact enables, the transferring of funds which cannot then be recovered, and who derives some demonstrable benefit thereby").

[8] *See* Cohen v. Sutherland, 257 F.2d 737, 742 (2d Cir. 1958).

[9] Brown v. Third Nat'l Bank (*In re* Sherman), 67 F.3d 1348 (8th Cir. 1995).

[10] Federal Deposit Ins. Corp. v. Wright (*In re* Still), 124 B.R. 24 (N.D. Tex. 1991).

[11] Dubertstein v. Werner, 256 F. Supp. 515 (E.D.N.Y. 1966).

section 550(b)(1) resulted in a transferee's not being required "to be a vigilant monitor for the creditors' benefit when he possesses no information suggesting that there is a fraudulent conveyance in the chain."[13] Nevertheless, the court came close to applying an objective standard quite similar to that applied under section 548(c), even in light of the additional requirement of the knowledge of the voidability of a transfer under section 550(b)(1):

> If a transferee possesses knowledge of facts that suggest a transfer may be fraudulent, and further inquiry would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels, thereby preventing a finding that he has knowledge. In such a situation, the transferee is held to have knowledge of the voidability of the transfer.[14]

## [3]—Without Knowledge of the Voidability of the Transfer.

To be protected under section 550(b)(1), a subsequent transferee also must take "without knowledge of the voidability of the transfer avoided."[15] Neither the Code nor the legislative history interprets this standard. The language appears to be derived from section 4-609(b)(1) of the Commission's bill,[16] and was included as surplusage to illustrate a transferee that could not be in good faith.[17] The Commission intended the standard to

[13] Brown v. Third Nat'l Bank (*In re* Sherman), 67 F.3d 1348, 1357 (8th Cir. 1995).

[14] *Id.*

[15] *See* Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 24 C.B.C.2d 1414 (1st Cir. 1991) (the transferee was not a good faith transferee and had knowledge of voidability when he knew of the entity's unmanageable indebtedness and the likelihood of bankruptcy, as well as the intent of the transferor to shield its assets from certain creditors); Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 898, 18 C.B.C.2d 155, 165 (7th Cir. 1988) (a knowledge of voidability does not require a "complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do"), *In re* Richmond Produce Co., 195 B.R. 455, 464 (N.D. Cal. 1996) (that transferee knew of debtor's financial difficulties and knew that recent buyout of debtor was highly leveraged, and that debtor's name appeared as a co-remitter on check, was sufficient to put transferee on notice).

[16] The Commission on the Bankruptcy Laws of the United States filed a draft statute with Congress in 1973. H. Doc. No. 93-137, 93d Cong., 1st Sess., pt. II (1973) [hereinafter Commission's bill]. The Commission's bill contained detailed notes interpreting the proposed statute. The proposed statute was introduced in the 93rd Congress without notes as H.R. 10792 and S. 2565.

[17] Commission's bill § 4-609. Some courts have taken issue with the notion that the language is surplusage and have ruled that knowledge of the voidability of the transfer is quite different from good faith. *See, e.g.,* CCEC Asset Mgmt Corp. v. Chemical Bank (*In re* Consolidated Capital Equities Corp.), 175 B.R. 629, 637-38 (Bankr. N.D. Tex. 1994) (if the two concepts were not

Service: **Get by LEXSEE®**
Citation: **2003 conn. super. lexis 1754**

*2003 Conn. Super. LEXIS 1754, \**

Yolen and Perzin, L.L.C. v. Nannette H. Wright et al.

CV020514379S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW BRITAIN AT NEW BRITAIN

2003 Conn. Super. LEXIS 1754

May 16, 2003, Decided
May 19, 2003, Filed

**NOTICE: [\*1]** THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff law firm instituted an action seeking an order voiding a transfer by defendant mother of her interest in her residence to defendant second husband. The law firm also sought a judgment of foreclosure by sale of the premises by virtue of a judgment lien filed on the property. The firm claimed that the mother transferred the property in violation of the Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552 et seq.

**OVERVIEW:** The firm was the named counsel for the mother's children in a custody proceeding and the mother and the children's father were responsible for paying the firm's fees. While the proceedings were underway, the mother transferred her interest in a property to her husband for no consideration. The mother and her children continued to live in the residence. The court found that the facts proved by clear, precise, convincing, and unequivocal evidence that the mother made a voidable fraudulent transfer as claimed by the law firm. Specifically, at the time of the transfer, the mother's liabilities exceeded her assets and she made the transfer without consideration at a time in which she was engaged in a dispute that she knew or should have known would have resulted in the incurring of legal and other fees. There was evidence that the mother had actual intent to hinder, delay, and defraud her creditors because she retained possession and control of the property and the transfer was concealed from the court and the attorneys through the filing of false financial affidavits. The husband had no statutory defense because he knew that the mother was insolvent at the time of the transfer.

**OUTCOME:** The court voided the mother's transfer of her interest in the property and ordered a foreclosure by sale to be held in accordance with its standing order. The court further awarded an appraisal fee.

**CORE TERMS:** transferee, fraudulent transfer, transferred, guardian ad litem, custody, actual intent, unequivocal, concealed, defraud, voiding, hinder, consisted, possession and control, judgment lien, fraudulent, foreclosure, convincing, incur, fees incurred, inclusive, appraisal, exceeded, owing

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers 

Evidence > Procedural Considerations > Burdens of Proof 

*HN1* A claim of fraudulent transfer must be shown by clear, precise and unequivocal evidence. More Like This Headnote

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers 

*HN2* A transfer made by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made and if the debtor made the transfer either with actual intent to hinder, delay or defraud any creditor of the debtor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor was in or about to engage in a transaction for which the remaining assets of the debtor were unreasonably small in relation to the transaction or where the transferor intended to incur or reasonably should have believed that she would incur debts beyond her ability to pay as they became due. Conn. Gen. Stat. § 52-552e(a). In determining whether actual intent existed, the court may consider among other things whether the debtor retained possession and control of the property transferred after the transfer, whether the transfer was concealed, whether the debtor had been sued or was threatened with suit prior to the transfer, whether the transfer consisted of substantially all the debtor's assets, whether the debtor moved or concealed assets, the value or consideration received by the debtor and whether the transfer occurred shortly before or shortly after the substantial debt was incurred. Conn. Gen. Stat. § 52-552e(b). More Like This Headnote

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers 

*HN3* In an action for relief against a transfer under Conn. Gen. Stat. § 52-552e, a creditor may obtain avoidance of the transfer to the extent necessary to satisfy the creditor's claim, subject to statutory defenses. Conn. Gen. Stat. § 52-552h. More Like This Headnote

Civil Procedure > Jury Trials > Province of Court & Jury 

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers 

Bankruptcy Law > Examiners & Trustees > Fraudulent Transfers 

*HN4* A transferee acting in good faith has a statutory defense to a fraudulent transfer claim. The Uniform Fraudulent Transfer Act as adopted in Connecticut does not define the term good faith, however, fraudulent transfer is a subject which is well developed in bankruptcy law where, in order to prove good faith, the transfer must have occurred in an arms-length bargain, and the transferee must have no intent to, or knowledge of the fact that transaction will, hinder, delay, or defraud others. 11 U.S.C.S. § 548(c). Whether a transferee acted in bad faith is a question of fact for the trier of fact. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Remedies

Civil Procedure > Entry of Judgments > Enforcement & Execution > Fraudulent Transfers 

*HN5* In an action for relief against a fraudulent transfer, Conn. Gen. Stat. § 52-552h(a)(1) empowers a court to render judgment for the creditor equal to the value of the

Get a Document by Citation 2003 Conn. Super. LEXIS 1754    Page 20 of 26

Page 3 of 5

asset transferred, as adjusted under Conn. Gen. Stat. § 52-552i(d) or the amount necessary to satisfy the creditor's claim whichever is less. The creditor is also entitled to a lien on the assets of the transferee, an injunction against further transfers or other equitable relief. The judgment may be rendered against the first transferee of the asset or the person for whose benefit the transfer was made. Conn. Gen. Stat. § 52-552i(b). A fraudulent transferee is required to forfeit that which he wrongfully obtained via the fraudulent transfer. More Like This Headnote

**JUDGES:** Hon. Vanessa L. Bryant, P.J.

**OPINIONBY:** Vanessa L. Bryant

**OPINION:** MEMORANDUM OF DECISION

This is an action seeking first an order voiding the transfer by the defendant, Nannette H. Wright (formerly Nannette Brossy), of her interest in her residence known as 15 Clifdon Drive, Simsbury, Connecticut (the property) to her present husband David B. Wright; and second, a judgment of foreclosure by sale of the premises by virtue of a judgment lien filed by the plaintiff on the property. Exhibits 1, 2, 18 and 19. The matter was tried to the court on various days ending April 3, 2003. The plaintiff claims that it is entitled to an order voiding the transfer of the property because the defendant Nannette Wright transferred the property in violation of the Fraudulent Transfer Act General Statutes, § 52-552 et seq.

HN1 A claim of fraudulent transfer must be shown by clear, precise and unequivocal evidence. Tyers v. Coma, 214 Conn. 8, 11, 570 A.2d 186 (1990); Tessitore v. Tessitore, 31 Conn.App. 40, 623 A.2d 496 (1993). [*2] The court finds that the following facts prove by clear, precise, convincing and unequivocal evidence that a voidable fraudulent transfer occurred as claimed by the plaintiffs.

By way of background, this case emanates from a custody proceeding in the Regional Family Trial Docket in the custody case of Brossy v. Brossy Docket No. FA 94-0365430S. In which Yolen and Perzin was named counsel for the minor children of Nannette Wright and Ann P. Coonley was named guardian ad litem for the children. The parents of the children were responsible for paying the fees incurred for these services. While the proceedings were ongoing and the plaintiff was providing services to the children, on July 26, 2000 Nannette Wright "for no consideration granted to David B. Wright [the co-defendant] . . . all of [her . . . rights, title and interest in and to . . . 15 Clifdon Drive Simsbury, Connecticut." Exhibit 13. At all relevant times prior to and after she transferred her interest in the property, Nannette Wright and the Brossy children have lived on the property and continue to do so. The plaintiffs introduced into evidence which showed that the transfer was made while Nannette Wright had debts [*3] in excess or her assets. That evidence consisted of affidavits filed by Nannette Wright in the custody proceedings and establish the following additional fads be clear, convincing and unequivocal evidence. The affidavits are dated March 29, 1997, May 2, 1997, November 21, 1997, January 12, 1998, February 11, 1998, February 3, 2000, November 24, 2000, February 26, 2001 and the last one was undated. Exhibits 3-11. They show that Nannette Wright had a 50% interest in property, her liabilities exceeded her assets, and the value of the property exceeded the debt secured by the property. Id. In signing the affidavit she certified that the statements made in the affidavit were true and accurate to the best of her knowledge and belief. Id. During the time these affidavits were filed, this court (Pickard, J.) entered an order dated January 26, 2001 in the custody case ordering Nannette Wright to pay 50% of the fees for legal and guardian ad litem services rendered to the Brossy children. Exhibit 15. The judgments were never satisfied and the amounts remain due and owing. The plaintiffs filed judgment liens on the property to secure the payment of the judgments and discovered the property [*4] had been transferred by Nannette to David and commenced this action seeking an order voiding the transfer and

Get a Document - by Citation - 2003 Conn. Super. LEXIS 315    Page 21 of 26

Page 4 of 5

foreclosing the judgment lien.

The court finds that judgments, inclusive of accrued interest owing to Yolen and Perzin is $ 34,345.03 and judgments, inclusive of interest owed to Ann P. Coonley P.C. equals $ 22,234.90. Exhibit 21. The property is worth $ 350,00 as evidenced by an appraisal. Exhibit 12.

**HN2**A transfer made by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made and if the debtor made the transfer either with actual intent to hinder, delay or defraud any creditor of the debtor or without receiving a reasonably equivalent value in exchange for the transfer and the debtor was in or about to engage in a transaction for which the remaining assets of the debtor were unreasonably small in relation to the transaction or where the transferor intended to incur or reasonably should have believed that she would incur debts beyond her ability to pay as they became due. General Statutes § 52-552e(a). In determining whether actual intent existed, the court may consider among other things whether the debtor **[*5]** retained possession and control of the property transferred after the transfer, whether the transfer was concealed, whether the debtor had been sued or was threatened with suit prior to the transfer, whether the transfer consisted of substantially all the debtor's assets, whether the debtor moved or concealed assets, the value or consideration received by the debtor and whether the transfer occurred shortly before or shortly after the substantial debt was incurred. General Statutes § 52-552e(b). At the time of the transfer Nannette Wright was engaged in a protracted custody battle involving disputes over parental rights and responsibilities, including the responsibility to pay legal and guardian ad litem fees incurred to represent the Brossy children's interests in the case. Accordingly, Nannette Wright transferred her interest in the property without consideration or equivalent value at a time when she was engaged in a dispute which she knew or should have known would result in the incurrence of legal and other fees and expenses on behalf of her children for which she was jointly and severally liable, absent a contrary ruling of the court.

In addition, **[*6]** the court finds that Nannette had actual intent to hinder, delay and defraud creditors. She retained possession and control of the property after the transfer, the transfer was concealed from the court and the attorneys and guardian ad litem for the children by repeatedly filing false financial affidavits after the date of the transfer listing an interest in the property. The transfer was made while the debts to the plaintiffs were being incurred, the transfer consisted of substantially all of Nannette Wright's assets, finally, Nannette Wright received no consideration or other value whatsoever for the transfer.

**HN3**In an action for relief against a transfer under Section 52-552e of the General Statutes, a creditor may obtain avoidance of the transfer to the extent necessary to satisfy the creditor's claim, subject to statutory defenses, none of which have been claimed by the defendants. General Statutes § 52-552h. Even if Mr. Wright claimed a defense, there is no evidence to support a claim that the transfer was made upon the default of leases or that Mr. Wright gave value in consideration for the transfer. General Statutes § 52-552i. **[*7]** **HN4**A transferee acting in good faith has a statutory defense to a fraudulent transfer claim. The Uniform Fraudulent Transfer Act as adopted in Connecticut does not define the term good faith, however, fraudulent transfer is a subject which is well developed in bankruptcy law where, in order to prove good faith, the transfer must have occurred in an arms-length bargain, and the transferee must have no intent to, or knowledge of the fact that transaction will, hinder, delay, or defraud others. Bankruptcy. Code, 11 U.S.C.A. § 548(c). In re Colonial Realty Co., 210 B.R. 921 (1997). David Wright is not entitled to rely on the good faith defense as he admitted that knew his wife was insolvent at the time of the transfer and was also incurring legal and guardian ad litem expenses on behalf of her children. Whether a transferee acted in bad faith is a question of fact for the trier of fact. Zapolsky v. Sacks, 191 Conn. 194, 464 A.2d 30 (1983).

**HN5**In an action for relief against a transfer as this is subdivision (1) of subsection (a) of Section 52-552h of the General Statutes, empowers a court to render judgment for **[\*8]** the creditor equal to the value of the asset transferred, as adjusted under subsection (d) of Section 52-552i of the General Statutes or the amount necessary to satisfy the creditor's claim whichever is less. The creditor is also entitled to a lien on the assets of the transferee, an injunction against further transfers or other equitable relief. *Id.* The judgment may be rendered against the first transferee of the asset or the person for whose benefit the transfer was made. General Statutes § 52-552i(b). A fraudulent transferee is required to forfeit that which he wrongfully obtained via the fraudulent transfer. *Litchfield Asset Management Corp. v. Howell, 70 Conn.App. 133, 799 A.2d 298 (2002).*

Nannette Wright's transfer of her 50% interest in the property known as 15 Clifdon Drive Simsbury, Connecticut is voided. The court finds the total debt to be $ 34,345.03. The court orders a foreclosure by sale to occur on Saturday, August 2, 2003, notice of the sale is to be published in the *Hartford Courant* on Sunday July 20, 2003 and July 27, 2003. The court awards an appraisal fee of $ 300.00. The sale is to be **[\*9]** conducted in accordance with the standing order of the court pertaining to foreclosures sale in the New Britain Judicial District.

By the Court

Hon. Vanessa L. Bryant, P.J.

Service: **Get by LEXSEE®**
Citation: **2003 conn. super. lexis 1754**
View: Full
Date/Time: Wednesday, January 18, 2006 - 5:03 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

 **LexisNexis®**    About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Case 3:02-cv-00030-TPS     Document 61-3     Filed 02/03/2006     Page 23 of 26

Service: **Get by LEXSEE®**
Citation: **2005 Md. App. LEXIS 272**

*165 Md. App. 300, \*; 885 A.2d 403;*
*2005 Md. App. LEXIS 272, \*\**

BONNIE CRUICKSHANK-WALLACE v. COUNTY BANKING AND TRUST COMPANY

No. 1447, September Term, 2004

COURT OF SPECIAL APPEALS OF MARYLAND

165 Md. App. 300; 885 A.2d 403; 2005 Md. App. LEXIS 272

October 31, 2005, Filed

**PRIOR HISTORY:** Appeal from the Circuit Court for Cecil County. Richard Eli Jackson, JUDGE. Holly Hall Publ'ns, Inc. v. County Banking & Trust Co., 147 Md. App. 251, 807 A.2d 1201, 2002 Md. App. LEXIS 170 (2002)

**DISPOSITION:** [\*\*1] JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In an action by plaintiff bank to recover funds from defendant wife allegedly transferred to her by her insolvent husband in violation of the Maryland Uniform Fraudulent Conveyance Act (MUFCA), Md. Code Ann., Com. Law §§ 15-201 through 15-214 (2000), the wife appealed a grant of summary judgment by the Circuit Court for Cecil County (Maryland) in favor of the bank and a denial of her own summary judgment motion.

**OVERVIEW:** The husband's business loan from the bank was already in default when the couple, who filed their taxes jointly, received large tax refund checks. The husband turned the checks over to the wife, who deposited them in a separate account. She later claimed to have used all the funds for family needs, including the support of the husband. The court held, first, that the couple's expressed intention to own all property as tenants by the entireties did not mean the refunds were held as such property, because that expression of intention occurred long before the property was actually acquired, and tenancy by the entireties required unity of time and other elements. Therefore, the husband, while insolvent, conveyed an interest to the wife to the extent the refunds related to his income. Furthermore, the wife could not claim that she gave fair consideration for the transfer in that the husband was discharging a duty to support the family or that a subsequent transfer of cash back to him discharged her duty to support him. Modern Maryland case law no longer recognized the doctrine of necessaries, in which such expenditures were presumed to be discharging a support duty.

**OUTCOME:** The court affirmed the judgment in all respects.

**CORE TERMS:** refund, entirety, spouse, fair consideration, tenancy, wage, summary judgment, spent, fraudulent conveyance, husband and wife, insolvent, conveyance, income tax, transferred, antecedent debt, family support, exemption, common-law, wives, marital, constructive, household, marriage, tenants, fraudulent conveyances, non-support, unities, deposited, intact, obligation to support

## LexisNexis(R) Headnotes ◆ Hide Headnotes

<u>Torts</u> > <u>Business & Employment Torts</u> > <u>Deceit & Fraud</u> 📖

**HN1** ⬇ A transfer is an actual fraudulent conveyance where it is made with the actual intent to defraud creditors. <u>Md. Code Ann., Com. Law § 15-207</u> (2000).  More Like This Headnote

<u>Torts</u> > <u>Business & Employment Torts</u> > <u>Deceit & Fraud</u> 📖

**HN2** ⬇ A transfer is a constructive fraudulent conveyance where, even if made without an actual intent to defraud, is made when the transferor was insolvent and was not for fair consideration. <u>Md. Code Ann., Com. Law § 15-204</u> (2000).  More Like This Headnote

<u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Standards of Review</u> 📖

<u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Summary Judgment Standard</u> 📖

<u>Civil Procedure</u> > <u>Appeals</u> > <u>Standards of Review</u> > <u>De Novo Review</u> 📖

<u>Civil Procedure</u> > <u>Appeals</u> > <u>Standards of Review</u> > <u>Issues of Fact & Law</u> 📖

**HN3** ⬇ The Court of Special Appeals of Maryland reviews a circuit court's decision to grant summary judgment de novo, as it is a purely legal decision. That court determines whether the circuit court properly concluded that there was no dispute of material fact, and, if so, whether the circuit court's decision that the moving party was entitled to summary judgment was legally correct. Md. R. 2-501(f). A material fact is a fact that would alter the outcome of a case depending upon how the fact-finder resolves the dispute.  More Like This Headnote

<u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Burdens of Production & Proof</u> 📖

**HN4** ⬇ On motion for summary judgment, the nonmoving party must demonstrate a dispute of material fact by proffering facts that would be admissible into evidence. Moreover, bald, unsupported statements or conclusions of law do not generate a genuine dispute of material fact, and thus cannot defeat a motion for summary judgment.  More Like This Headnote

<u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Summary Judgment Standard</u> 📖

**HN5** ⬇ Even in cases involving intent and motive, if the prerequisites for summary judgment are met--there being no dispute of material fact--summary judgment may be granted.  More Like This Headnote

<u>Real & Personal Property Law</u> > <u>Estates, Rights & Titles</u> > <u>Concurrent Estates</u> 📖

<u>Torts</u> > <u>Business & Employment Torts</u> > <u>Deceit & Fraud</u> 📖

**HN6** ⬇ While some states have either abolished or significantly altered the common-law estate of tenancy by the entirety, Maryland retains the estate in its traditional form. The common-law incidents of estates by the entireties are that the tenants can only be and must be husband and wife; that each spouse is seized of the entire property (which can be real or personal); that each spouse is entitled to the income derived from the property and cannot encumber or dispose of it without the other spouse's

consent; and, upon the death of one spouse, the other takes the whole. Because entireties property is owned by the husband and wife as the marital unit, it is not subject to the claims of individual creditors of either spouse. Entireties property is subject to claims of a creditor of both tenants, however. For this reason, a creditor of one spouse may not attack as a fraudulent conveyance the transfer of entireties property by the spouses. More Like This Headnote

Real & Personal Property Law > Estates, Rights & Titles > Concurrent Estates 

HN7 A tenancy by the entireties is essentially a joint tenancy, modified by the common law theory that the husband and wife are one person. Thus, just as the creation of a joint tenancy requires the four essential common law unities of interest, title, time, and possession, so does the creation of a tenancy by the entirety. The husband and wife must enjoy identical interests; enjoy identical, undivided possession; and the tenancy must commence at the same time via the same interest. The unities must exist concurrently; if any one is missing, the estate cannot be one of joint tenancy, including a tenancy by the entirety. More Like This Headnote

Real & Personal Property Law > Estates, Rights & Titles > Concurrent Estates 

HN8 A husband and wife may together come into possession of property from a third party that will be deemed tenancy by the entirety property upon receipt, so long as the four unities have been met and it is the intention of the transferor that the property be so held. Likewise, a spouse who holds property individually may transfer it to the marital unit, provided the transferring spouse has the present intent to create such a tenancy. Intent alone does not make property entireties property, however; the four unities of interest, title, time and possession also must exist. More Like This Headnote

Real & Personal Property Law > Estates, Rights & Titles > Concurrent Estates 

Tax Law > State & Local Tax > Administration & Proceedings 

Tax Law > State & Local Tax > Income Tax > Individuals, Estates & Trusts 

HN9 Case law holds that issuance of a Maryland state income tax refund check in the names of a husband and a wife does not create a tenancy by the entirety in the refund monies. More Like This Headnote

Tax Law > Federal Income Tax Computation

Tax Law > Federal Tax Administration & Procedure > Administration > Return & Payment Time & Place Requirements (IRC secs. 6071-6091, 6151-6167) 

HN10 Spouses filing a joint federal tax return have separate interests in any overpayment, the interest of each depending on his or her income. The filing of a joint federal income tax return does not have the effect of converting the income of one spouse into the income of another. More Like This Headnote

Family Law > Marital Duties & Rights > Property 

Tax Law > Federal Tax Administration & Procedure > Administration > Return & Payment Time & Place Requirements (IRC secs. 6071-6091, 6151-6167) 

HN11 A tax overpayment is apportionable to a spouse to the extent that he or she contributed to the overpaid tax. A joint income tax return does not create new

property interests for the husband or the wife in each other's income tax overpayment.  More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud

HN12 See Md. Code Ann., Com. Law § 15-204 (2000).

Torts > Business & Employment Torts > Deceit & Fraud

HN13 Under the Maryland Uniform Fraudulent Conveyances Act, Md. Code Ann., Com. Law §§ 15-201 through 15-214 (2000), "fair consideration" is given for property or an obligation if: (1) in exchange for the property or obligation, as a fair equivalent for it and in good faith, property is conveyed or an antecedent debt is satisfied; or (2) the property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared to the value of the property or obligation obtained. Md. Code Ann., Com. Law § 15-203 (2000). Thus, in the absence of proof of actual intent by an insolvent debtor to hinder, delay, or defraud future creditors by conveying property, he will be presumed to act with that intent, unless, for a fairly equivalent consideration, whether presently arising or being in satisfaction of an antecedent debt, he transfers in good faith all or part of his property to one of his creditors. The intent of the transferee is determinative only if the transfers made to him were fair consideration in satisfaction of a bona fide debt.  More Like This Headnote

Constitutional Law > Equal Protection > Gender & Sex

HN14 See Md. Const. Decl. Rights art. 46.

Constitutional Law > Equal Protection > Gender & Sex

Family Law > Marital Duties & Rights

HN15 In Condore v. Prince George's County, the Court of Appeals of Maryland has held that the Equal Rights Amendment (ERA), Md. Const. Decl. Rights art. 46, renders the common law doctrine of necessaries unconstitutional. As a consequence of the ERA, the ancient necessaries doctrine is no longer part of the common law of Maryland, and neither the husband nor the wife is liable, absent a contract, express or implied, for necessaries such as medical care supplied to the other.  More Like This Headnote

Family Law > Marital Duties & Rights

Family Law > Parental Duties & Rights > Support of Children

HN16 In Maryland, both spouses in a marriage owe a legal duty each to the other spouse to refrain from willful non-support when they are capable of providing support. Mothers and fathers are jointly and severally responsible for their children's support, care, nurture, welfare, and education. Md. Code Ann., Fam. Law § 5-203(b)(1) (2004). A spouse cannot pledge the credit of the other spouse for necessaries for the family, without the other spouse's agreement. A creditor of a spouse who owes a debt upon purchase of family necessaries has recourse against only the contracting spouse, not against the other spouse.  More Like This Headnote

Family Law > Marital Duties & Rights

Family Law > Parental Duties & Rights > Support of Children