One delegate noted: "It is our duty so to provide as to prevent the greatest amount of suffering and want to the debtor, *and those helpless ones who may be dependent on him*, and at the same time work the least amount of evil to the creditor." Id. at 699 (quoting 1 *Debates and Proceedings of the Maryland Reform Convention to Revise the State Constitution* 408 (1851) (emphasis [*334] added)). We commented that the "rationale [for exemptions from execution] is usually a subsistence core to protect debtor and dependents." Id. at 701 (quoting Aaron, *Bankruptcy Law Fundamentals* § 7.01 (1991)). The exemption statutes thus strike a balance by providing a means for a debtor to satisfy the judgment against him while also satisfying his obligation to support his dependents.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n18 The Maryland Declaration of Rights, article III, section 44, provides that HN18 "laws shall be passed by the General Assembly, to protect from execution a reasonable amount of the property of the debtor."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**58]

We return now to the holding in *Pearce v. Micka, supra*, and the question of whether, in this case, there was any evidence adduced on the summary judgment record that William received fair consideration from Bonnie for his transfer of his $ 22,805 in tax refunds to her. We note first that, notwithstanding the language in *Pearce*, HN19 the MUFCA defines "conveyance" to mean "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." CL § 15-201 (c). William's transfer of his ownership interest in the tax refunds to Bonnie plainly was a conveyance under that definition. There is nothing in the MUFCA that makes a transaction that otherwise is a conveyance not a conveyance merely because it is a transfer from one spouse to the other. We have found no case in the United States that has so held. To the contrary, the cases are legion that transfers between spouses are conveyances that, like transfers between a debtor and any close family member, should be closely scrutinized for fair consideration. *See, e.g., Neshewat v. Salem*, 365 F. Supp. 2d 508, 522 (S.D.N.Y. 2005); [**59] *In re Harper*, 132 B.R. 349, 354 (Bankr. S.D. Ohio 1991); *Speiser v. Schmidt*, 387 Pa. Super. 30, 37-38, 563 A.2d 927 (1989).

The parties do not dispute that William was insolvent when he conveyed the tax refunds to Bonnie. In her interrogatory answers and deposition, Bonnie attested that *all* the expenditures she made from the tax refunds were for "family support" or "necessaries." Without question, the evidence showed that at least some of the money Bonnie spent was for "necessaries," that is, food, rent, and gas and electricity. (Many of the other expenditures either clearly were not for [*335] "necessaries," or whether they constituted "necessaries" is in controversy.) The circuit court was wrong, then, in finding that Bonnie presented no evidence whatsoever that any of the tax refund money was spent on necessaries for the family. The question as we see it, however, is whether the fact that Bonnie used some of the money transferred to her by William for basic support items for their family was material to the issue of fair consideration. We conclude that it was not. HN20 To the extent that the brief, secondary holding in *Pearce v. Micka* is inconsistent [**60] with this conclusion, we disapprove of it. n19

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n19 We note that, while *Pearce* was decided after the *Condore* case abolished the doctrine of necessaries, almost all of the transfers at issue in that case took place before *Condore* was decided, when the necessaries doctrine was still alive and well in Maryland.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

When William conveyed the tax refunds to Bonnie, they were living in an intact family with their children. They both had an equal and complete obligation to support the children that was joint and several. Their situation was not as it was for parents pre-*Rand*, when the father had a primary duty of support. Moreover, both William and Bonnie had a legal obligation not to willfully fail to support the other, if capable of rendering support. Their situation was not as it was pre-*Condore*, when it was the husband's sole and non-reciprocal legal duty to support his wife by furnishing necessaries for her and their children. Rather, Bonnie had the same obligation to support the children and to **[**61]** support herself and William as he had to support Bonnie, the children, and himself. The payment of household expenses and support of the children was as much Bonnie's duty as it was William's duty.

In that circumstance, Bonnie's payment of household expenses was not fair consideration for William's transfer to her of the tax refunds. Bonnie already was obligated to provide support for the children, William, and herself; she used the money she received from him to satisfy her own obligation. That cannot have been fair consideration to William. There was no evidence adduced to show that Bonnie was herself incapable of meeting her support responsibilities. Indeed, the **[*336]** only evidence generated in the summary judgment record on that point showed that Bonnie had her own income from which she routinely paid household expenses (including, in particular, the rent, which in May and June 1999 she proceeded to pay out of the tax refunds, not her own income).

If Bonnie's use of the tax refunds conveyed to her by William could be fair consideration to William, by satisfying a legal support obligation that she shared jointly and severally with him, husbands and wives could easily circumvent the **[**62]** exemption laws and make conveyances benefitting each other and depriving their creditors.

Here, if William had kept drawing a salary from GCB, and the Bank had garnished his wages, at least 75% of his disposable wages would have been exempt from attachment, and could have been used by him, directly, for family support. If William had deposited the tax refund checks into his own bank account (as he had done the year before, prior to the judgment in favor of the Bank), and the Bank had attached the account, he could have claimed an exemption of up to $ 6,000 to use for family support. If William had deposited the money and there had been no effort by the Bank to attach it, he could have used it to buy goods and services (including those that would benefit his family), because he would be receiving fair consideration for the transfers of money used to purchase the goods or services (and the providers would be acting in good faith, assuming they did not know of his insolvency).

Instead of doing any of these things, William transferred the tax refund money to Bonnie, thus insulating it from attachment by the Bank. Bonnie could have kept the money or spent it on anything she wanted. To **[**63]** the extent that she spent some of the money on household goods, rent, and other family basics, she was satisfying her own responsibility to provide for her family, not William's responsibility.

Finally, in the most circular of her arguments, Bonnie maintains that the $ 1,000 she gave to William out of the refund money he conveyed to her was to satisfy her obligation to support him, as he was destitute and could not support **[*337]** himself. Obviously, Bonnie's use of the money to discharge her duty to support William was not fair consideration to William for his transfer of his money to her to begin with. Rather, it was a transparent means to circumvent the exemption laws, which would allow William to retain funds to support himself and his family.

**B. Payment Of William's Attorney's Fees**

As noted above, Bonnie spent $ 6,000 of the tax refunds to pay an attorney who represented William. Her primary argument to the circuit court respecting this payment was that it was a family "necessary." She made the alternative argument, which has become her primary argument on appeal, that the payment was in satisfaction of an antecedent debt, and therefore was fair consideration to William. [**64]

The summary judgment record discloses only that the legal fees in question arose when William "had been sued in Massachusetts by Christian Book Distributors . . . [which] took a judgment against [William] for over a million dollars" in 1999.

HN21 A "property or obligation [] received in good faith to secure . . . antecedent debt in an amount not disproportionately small as compared to the value of the property or obligation obtained" is fair consideration. CL § 15-203; see Drury v. State Capital Bank of E. Shore Trust Co., 163 Md. 84, 90-91, 161 A. 176 (1932); see also Sullivan v. Dixon, 280 Md. 444, 449, 373 A.2d 1245 (1977) (holding that an antecedent debt of a grantor or mortgagor constitutes fair consideration for a conveyance to a creditor, but the antecedent debt of a third person does not); Berger v. Hi-Gear Tire & Auto Supply, Inc., 257 Md. 470, 476, 263 A.2d 507 (1970) (same). Moreover, "aside from a statute of bankruptcy or insolvency, a debtor has a right to transfer in good faith and for a fair consideration, even though it consists of an antecedent indebtedness, all or part of his [**65] property to one creditor, although he is insolvent and such transfer hinders or delays his creditors." Kennard, supra, 176 Md. at 504. A debt is "antecedent" if it predates the debtor's insolvency. See Berger, supra, 257 Md. at 476 (noting that debts [*338] incurred over the course of several years before a judgment rendering the debtor insolvent was entered were antecedent debts).

In the instant case, there was no evidence presented in the summary judgment record that the attorney's fee Bonnie paid from the tax refunds transferred to her by William was an antecedent debt, i.e., a debt that was incurred before the Bank obtained its judgment against William on November 25, 1998. The record discloses only that the fee was for services rendered in connection with a default judgment entered against William by a court in Massachusetts sometime in 1999, after the judgment in the Debt Action was entered. Bonnie did not present any evidence that could support a finding that the attorney's fee was a debt that predated the judgment, and thus was an antecedent debt. Accordingly, even assuming that William's transfer of the tax refunds to Bonnie and her payment [**66] from the refunds of the attorney's fees could constitute fair consideration if the fee debt was antecedent to the judgment, n20 there was no evidence that the fee debt in fact was antecedent to the judgment. Accordingly, the court properly granted summary judgment to the Bank on that claim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n20 Even if there were evidence that the fee was an antecedent debt, this would only mean, as the Bank pointed out in the hearing on the cross-motions for summary judgment, that William himself could have used the tax refunds to discharge the debt, which would not have been a fraudulent conveyance. However, William transferred the tax refunds to Bonnie, and then she paid the debt. Bonnie cannot now argue, however implicitly, that fair consideration flowed from the attorney whom she paid, through her, to William. HN22 Fair consideration for a conveyance must flow from the *initial* transferee--which in this case was Bonnie--and not merely from the ultimate recipient of the funds. See CL § 15-203.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[**67]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

Service: **Get by LEXSEE®**
Citation: **2005 Md. App. LEXIS 272**
View: Full
Date/Time: Friday, February 3, 2006 - 1:58 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.