UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02-CV-30 (TPS) |
| | : | |
| v. | : | |
| | : | |
| DOUGLAS WHITE and | : | |
| ROSALIE A. WHITE, | : | |
| Defendants | : | |
| | : | FEBRUARY 10, 2006 |

REPLY BRIEF OF DOUGLAS AND ROSALIE WHITE

Plaintiff, the creditor of Douglas White, argues in its trial brief that the Whites were seeking to avoid creditors through their practice of using Mrs. White's accounts to pay household and living expenses. It is argued that Mr. White did not receive reasonably equivalent value in exchange for the commission checks deposited into Mrs. White's checking account notwithstanding the clear evidence that the funds in that account were used to pay the household and living expenses of Mr. and Mrs. White. In support of the claim that Mr. White did not receive reasonably equivalent value, Cadle points to two out-of-state cases where

transfers, under different circumstances than are presented here, have been found to constitute fraudulent conveyances.

The primary distinction between the cited Maryland case and the present case is that the underlying facts are decidedly different. Here, Mr. and Mrs. White began their established practice of paying household bills long before there existed any potential liability to The Cadle Company or its predecessor creditor company. Mr. White testified that such practice began as far back as 1970. There was, therefore, no change in their bill paying methods as a reaction to the deficiency judgment obtained by Cadle in 1997. The record also reflects, no action was taken to collect on the judgment from Mr. White, and no claim was made against Mr. White until 2001 at his examination of judgment debtor (Exhibit _).

Second, the disbursements from Mrs. White's account were almost universally used to pay joint obligations or credit card debt, incurred by each of them from time to time. Thus, this was not a situation where Mr. White's income was paying solely for Mrs. White's expenses. Indeed, his commission checks were essentially the entire gross income of the couple.

The fact that the commission checks represented gross revenue is another distinguishing factor. Mr. White's entire earnings were exposed to garnishment by either an attaching or executing creditor such as Cadle. Cadle learned, at the time of the examination of judgment debtor, the identities of Mr. White's accounts and could easily discern which ones were active

(see, e.g., Exhibit 52 which lists all of the payors). Cadle never even attempted to intercept those funds (Tx. at p. 73).

The "agreement" between the defendants was that Mr. White promised to pay to Mrs. White the commissions he earned as a sales representative. In turn, she promised to pay bills that the couple owed, whether they be joint or several. Upon Mr. White's tendering a check pursuant to that agreement, Mrs. White fulfilled her end of the agreement and paid bills that were antecedent debts. Rarely, if ever, were the checks provided by Mr. White sufficient to retire the entire debt the couple owed. For example, again focusing on Exhibit 38 as an example, there were frequent late charges, and virtually every credit account ran a balance due after the payments were made. Thus, unlike cases cited by plaintiff, all of the funds that were provided by Mr. White were used by Mrs. White to provide reasonably equivalent value to Mr. White.. See In Re Kennedy, 279 B.R. 455, 39 Bankr.Ct.Dec.174.

The evidence is uncontroverted that this agreement had been in place since 1970, with separate accounts having been established in the late seventies or early 80's (Tx. at p. 81). Thus, this case is not at all like cases cited where the transferor changed the patterns of deposit and withdrawal once indebtedness became a factor in their lives. Again, while a judgment may have entered as early as 1997, no timely collection effort was undertaken for the next four years, just prior to the initiation of this litigation (Tx. at p. 72).

The plaintiff makes much of approximately six transfers during the entire span of time for which it seeks recovery.  First, the sale of the home owned by Lee White to a trust established by her aunt, second, two or three commission checks delivered, purportedly, directly to Lee White, third, the purchase of a boat and finally some rent checks delivered to Mr. White from a tenant on the property owned by the Trust.  First, in the overall picture, these are trivial incidents in numbers and amounts.  There certainly is no pattern of conduct with respect to any of the transactions that can be attributed to the avoidance of any particular creditor.

Plaintiff claims that the defendants' transfers of their real property to Mrs. White and subsequently to the trust offers some proof of intent to deprive Cadle of assets to satisfy its judgment.  However, the uncontroverted testimony of Mr. White was that the transfer occurred at a time when the business was doing well and that the transfers were part of an estate plan, not unusual or improper acts.  The again uncontroverted testimony is that the house was transferred to the Trust for a price equal to the average of the value determined in three appraisals.  The record also shows that while the house was listed for sale, it did not sell for several years.  There is no evidence that the White's in any way contributed money to the trust that owns the property.  The plaintiff also implies that there was somehow something improper or unusual in Mrs. White's mortgaging of the house to secure her guaranty of a bank loan made to Mr. White's

business. Again, there is nothing improper or unusual about a wife providing collateral to support her husband's business financing.

Good Faith

In 2002, this suit against Mrs. White was launched. While it is fair to say that Mrs. White knew that her husband's business had failed and that the building had been taken by the bank, it is not fair to have the court conclude, absent evidence, that Mrs. White knew that the transfer of commission checks from Mrs. White would hinder, delay or defraud others. There is no evidence that Mrs. White knew who the "others" were. Cadle, after all, does not emerge until late 2001, four years after the property was foreclosed and a deficiency entered. There is no evidence of any contact with Mrs. White, other than the filing of this lawsuit, that would give her knowledge of the extent of Mr. White's indebtedness.

Plaintiff avers that Mrs. White must have known of the financial circumstances in which the Whites found themselves. Yet, even if that were so, the only action taken by Mrs. White was to continue her established practice of using her husband's employment income to pay the debts and living expenses of the household. There are no "hidden" assets that flow from the commission checks. The conclusion that Cadle would have the Court draw, that Mrs. White acted in "bad faith" is wholly unsupported by the evidence presented in this case.

The defendants urge the factual finding in this case that Mr. White received reasonable equivalent value for each of the transfers he made to Mrs. White. The money was used to pay mutual bills (Rosalie White Transcript at p. 19). Further, Mrs. White acted in good faith in continuing their long-standing practice of her paying the couple's bills. Indeed, she testified at deposition that she did not even know of the judgment by Cadle until shortly after the lawsuit was filed (Deposition Transcript at p. 17).

        DEFENDANTS,
        DOUGLAS WHITE AND ROSALIE A. WHITE


By_____
  R. Bradley Wolfe
  Gordon, Muir and Foley, LLP
  10 Columbus Boulevard
  Hartford, CT 06106
  Telephone Number: (860) 525-5361
  Fed. Bar No. ct 04332
  rbwolfe@gmf.law.com

## **C E R T I F I C A T I O N**

This is to certify that a copy of the foregoing was sent, via facsimile, and mailed, postage prepaid, to the following counsel of record on February 10, 2006:

Paul N. Gilmore, Esquire
Updike, Kelly & Spellacy, PC
One State Street
PO Box 231277
Hartford, CT 06123-1277

_____
R. Bradley Wolfe

::ODMA\PCDOCS\DOCS\411440\1